## Commonwealth v. Joseph Morrison, Appellant.

193     613
 25 SC 494
193     613
 29 SC 4382

193     613!
222      1306

*Criminal law—Murder—Ingredients of murder of the first degree—Review of evidence by court—Act of February* 15, 1870.

Under the 2d section of the Act of February 15, 1870, P. L, 15, it is the duty of the court in all cases of murder of the first degree to determine whether competent evidence was introduced which, if believed by the jury, would furnish the elements or ingredients of that grade of murder, but it is not for the court to determine whether the jury should or should not have believed and relied on the evidence adduced.

*Criminal law—Murder—Ingredients of murder—Use of deadly weapon.*

He who uses upon the person of another, at some vital part, with manifest intention to use it upon him, a deadly weapon, such as an ax, a gun or a knife, must, in the absence of qualifying circumstances, be presumed to know that it is likely to kill, and knowing this must be presumed to intend the death which is the probable and ordinary consequence of such an act.

On the trial of an indictment for murder, a verdict of guilty of murder in the first degree will be sustained where the evidence shows that after a quarrel the deceased knocked the prisoner down and then walked away

for a distance of ten or twelve feet, and stood leaning against a stable door; that the prisoner, after lying on the ground for three or four minutes, arose, took out a knife with a blade four inches long, and advanced towards the deceased with the knife in his right hand, behind his back, and when he reached the deceased, placed his left hand upon the latter's shoulder and immediately plunged the knife into his thigh and abdomen, inflicting wounds from which death ensued.

*Criminal law—Murder—Instructions—Practice.*

Where the court has fully charged the jury in a murder trial it cannot be convicted of error in failing to give instructions which were not requested by the prisoner.

*Practice, O. & T.—Appeals—Stenographer's errors.*

Errors of punctuation made by a stenographer in reporting the charge of the trial judge should be corrected by the court below before the record is certified to the Supreme Court. Per STERRETT, C. J.

*Criminal law—Murder—Evidence—Practice.*

A verdict of murder in the first degree will not be reversed because the commonwealth failed to offer in evidence a garment worn by the prisoner at the time of the killing, and alleged to have on it marks of blood, where there is nothing to indicate that the prisoner was prejudiced by the omission, or that it was not equally in his power to put the garment in evidence, if he had so desired.

*Criminal law—Murder—Jury—Discretion of court.*

What is done for the comfort and convenience of jurors who are temporarily indisposed during a murder trial is a matter resting in the sound discretion of the court, and this discretion will not be reviewed by the Supreme Court where there is no evidence of its abuse.

*Criminal law—Murder—Recording sentence—Wrong number of term.*

A clerical error of the court's officer in writing the wrong number of the term in recording a sentence of death is not reversible error.

Argued Oct. 9, 1899. Appeal, No. 240, Jan. T., 1899, by defendant, from judgment of O. & T. Mifflin Co., Nov. T., 1898, No. 2, on guilty of murder in the first degree. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, FELL and BROWN, JJ. Affirmed.

Indictment for murder. Before BAILEY, P. J.

At the trial it appeared that on August 18, 1898, Joseph Morrison, the prisoner, stabbed and killed Harry Dougherty at the Brindle hotel in Belleville, Mifflin county. The weapon used was a large cattle knife, having a blade about four inches long. The testimony of spectators who saw the killing is stated at length in the opinion of the Supreme Court.

The court charged in part as follows:

[Excusable homicide is a killing by accident or in defense of one's self where there is no possible escape or protection except in taking the assailant's life, or where there is reasonable apprehension of loss of life or great bodily harm so imminent at the time of the assault as to present to the prisoner no alternative of escaping the consequences except by slaying the assailant. Where a party assaulted has reasonable grounds for belief that he is in danger of loss of life or great bodily harm, and does so believe, and has no probable means of escape, he is justified in acting upon appearances as they present themselves to him at the time, and killing his assailant, and this though it should turn. out afterwards he was mistaken. But it must appear that the nature of the assault was such as to excite the fears of a reasonable man.] [6]

Felonious homicide is the killing of a human creature without justification or excuse, and is divided into murder and manslaughter.

Murder is defined to be, " Where a person of sound memory and discretion unlawfully kills any reasonable creature in being and in the peace of the commonwealth, with malice aforethought, either expressed or implied."

At common law there were no degrees of murder, and there was but one punishment for the crime. More than one hundred years ago, as human civilization, regarding the infirmities of nature and prompted by the dictates of humanity, advanced, our commonwealth made a distinction between murders so far as the punishment of the offense is concerned. In 1794 and again in 1860 it enacted a law on that subject, as follows: " All murder which shall be perpetrated by means of poison or by lying in wait or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration of or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree."

Murder of the second degree is where there is a wilful and malicious attempt to do bodily harm and death results unintentionally. Manslaughter is defined to be " The unlawful killing of another without malice, either expressed or implied."

It is also of two kinds, voluntary manslaughter and involuntary manslaughter. Voluntary manslaughter is the killing of another upon a sudden heat of passion or quarrel, where there is sufficient cause or provocation and a state of passion resulting therefrom, without time to cool and reason to interpose, which places the slayer beyond the power of reason and impels him to the deed. Involuntary manslaughter consists of the killing of another by accident, whilst doing an unlawful act, not amounting to a felony, or doing a lawful act, in an unlawful manner.

The killing of a human being is presumed to be murder, but not murder of the first degree, but of the second degree. When the commonwealth alleges that the offense is murder of the first degree the burden is upon it to show by evidence that admits of no reasonable doubt that the killing was wilful, deliberate and premeditated, with malice, or that it was perpetrated by poison or lying in wait, or in the commission or attempt to commit arson, rape, robbery or burglary. [To reduce the offense below murder of the second degree, the burden is upon the defendant.] [8]

You will understand us, gentlemen, that the presumption which arises from the act of killing is that it was murder of the second degree; the burden is upon the commonwealth to raise it to a higher degree, and upon the defendant to reduce the offense to a lower degree, than murder of the second degree. To find the prisoner guilty of murder of either the first or second degrees you must be satisfied from the evidence, beyond a reasonable doubt, that the killing was without justification or sufficient excuse, and that it was wilful and malicious. Malice may be either expressed or implied. Expressed malice may be established by declarations of the prisoner of an intent to kill or to commit great bodily harm. Malice may be implied from the use of a deadly weapon directed against a vital part of the body. Malice and a design to kill may be presumed from the savage nature of the attack and the weapon employed.

With these general principles of law to guide you in your deliberations you will consider all the evidence produced by the commonwealth in the case, as well as that on behalf of the prisoner. If in our presentation of the case to you we fail to specially refer to any evidence in the case you must not for that

reason regard it as immaterial, but you must consider all the evidence on both sides before making up your verdict the same as if we particularly referred to it. You will endeavor to remember all of it and give to every part of it all the weight you think it is entitled to. As we have said before you must in every step of your deliberations bear constantly in mind the presumption of the prisoner's innocence of the charge against him in this indictment.

The commonwealth does not allege in this case that the killing of Harry Dougherty was by poison or in the perpetration of or attempt to perpetrate any of the felonies in the act of assembly defining the degree of murder to which we have already called your attention, but we understand that it does allege that the killing was wilful, deliberate and premeditated, with malice aforethought, and without any justification or excuse on the part of the prisoner.

[It is alleged by the commonwealth and evidence has been adduced in your hearing, that Joseph Morrison, the prisoner at the bar, did, on the afternoon of August 18, 1898, in the town of Belleville, this county, deliberately, wilfully and premeditately, without sufficient excuse or justification, kill Harry Dougherty.] [9] . . . .

The law fixes no exact period of time that may be called "cooling time." The human mind acts differently in different individuals. Passion subsides in some men's minds more quickly than in others. Some form a deliberate purpose sooner than others. Therefore the law leaves it to the jury to determine that question under the facts and circumstances of each case as it may arise. [If for any period of time, no matter how short, there was on the part of the prisoner a conscious design and determination to kill, the killing is murder and not manslaughter, notwithstanding the previous conduct of the deceased.] [5] The evidence, as I recollect it, is that the time was from one and one half minutes to three or four minutes. The prisoner estimated the time at about one minute.

The commonwealth alleges that after the prisoner was knocked down he deliberately prepared a knife with an evil design; that he was evidently anticipating another combat and had prepared himself for it; that he approached the deceased with it in his hand, concealed behind his back, if it was there

concealed, a distance of from ten to fifteen feet, when the deceased was not attempting to do him any harm. The cutting of the deceased and [the deliberate wiping the blood off the knife upon his trousers show a coolness of purpose that rebuts the contention of the prisoner that the killing was in the heat of passion.] [10]

[The prisoner admits the preparation of the knife] [11] and that he stabbed the deceased with it, but claims that his passion had not subsided and that he had no intention of killing the deceased. He also denies that he concealed the knife behind his back, as alleged by the commonwealth.

Verdict of guilty of murder of the first degree.

On a motion for a new trial the court said in part:

The twelfth reason assigned for a new trial was probably suggested by improper punctuation by the stenographer in transcribing the last paragraph of the charge. The punctuation of that paragraph does not permit it to express the thought we had in mind when the charge was delivered. The whole paragraph was delivered as one sentence, commencing with the words, " The commonwealth alleges." The punctuation divides it into three sentences. No period should have been used until at the end of the paragraph. Where the two intervening periods are used semicolons should have been. As punctuated the middle one of the three sentences is incomplete. The purpose of the whole paragraph was a statement to the jury of what " the commonwealth alleges " rebutted the contention of the prisoner that the killing was in the heat of passion. The punctuation of it might indicate that we stated to the jury as a conclusion of law that " the cutting of the deceased and the deliberate wiping the blood off the knife upon his trousers " did rebut the contention of the prisoner that the killing was in the heat of passion, which is wholly inconsistent with other parts of the charge. By substituting semicolons in place of the periods, the paragraph will appear just as it was delivered, in but one sentence. The words used were the words of the court. The punctuation of them was the act of the typewriter, and could not possibly have done the defendant's cause any harm. The fact that the prisoner after stabbing the deceased wiped the blood off the knife upon

his trousers appeared in the testimony of witnesses on both sides, and was not contradicted or denied. . . . ·

During the trial three or four of the jurors became slightly indisposed, and desired the attendance of a physician. A reputable physician was sent for, who examined them either in open court in the presence of the prisoner, or in an adjoining room in the presence of a constable who had them in charge. The trial, of course, did not proceed during the visits of the physician, and was several times interrupted by the continued indisposition of one of the jurors. The illness of the others promptly yielded to treatment. The trial only proceeded when we were satisfied by consultation with the physician that the jurors were comfortable and capable of giving their attention wholly to the trial. We do not think that the temporary and slight indisposition of the jurors, and the ministration to them of the physician during the trial, prejudiced the defendant's cause in the least. No physician or other person was with the jury during any portion of their deliberations after they retired for deliberation.

The jury having found the facts to be as the commonwealth contended, they were justified in rendering the verdict they did.

We have carefully examined the whole case in as favorable a light to the prisoner as we possibly could and have come to the conclusion that the prisoner had a fair trial and that the evidence justified the verdict.. He was ably defended by eminent counsel. The integrity of the jury is not impeached. There is no allegation of after-discovered evidence that would likely produce a different verdict in case a new trial was granted. Therefore we cannot sustain either of these motions.

And now, May 22, 1899, the motions in arrest of judgment and for a new trial are both overruled.

On motion of the district attorney sentence of death was passed upon the defendant.

The defendant appealed.

*Errors assigned* among others were (1) that the ingredients necessary to constitute murder of the first degree do not exist in this case ; (2–4) that the charge was inadequate ; (5, 6, 8–11) above instructions, quoting them ; (12) the judgment in this case should be reversed because the commonwealth did not

offer in evidence the trousers worn by the prisoner at the time of the cutting, the same then and ever since having been in the possession of the commonwealth, as the said trousers would have rebutted the testimony that the prisoner, after the cutting, wiped the blood from the knife on his trousers; (13) the judgment should be reversed because of the sickness of several jurors so that they were unable to give the trial that due consideration, deliberation and care to which it was entitled; (14) the judgment should be reversed and sentence set aside because the prisoner was sentenced as of No. 1, November term, 1898, whereas the number of the case is No. 2, November term, 1898.

*F. W. Culbertson,* with him *Horace J. Culbertson,* for appellant.—The cutting occurred in a rapid fight and heated broil; there was great provocation and aggravation, together with the shortness of time, and that Morrison did not flee establishes conclusively, the prisoner respectfully submits, that the ingredients necessary to constitute murder of the first degree do not exist in this case.

The burden of proof never shifts, but rests on the prosecution throughout to establish the guilt of the prisoner beyond a reasonable doubt: Meyers v. Com., 83 Pa. 143.

The judgment should be reversed on account of the inadequacy of the charge: Goersen v. Com., 99 Pa. 388; Com. v. Silcox, 161 Pa. 498; Drum v. Com., 58 Pa. 16; Lanahan v. Com., 84 Pa. 89; Com. v. Buccieri, 153 Pa. 535; Meyers v. Com., 83 Pa. 143.

The doctrine of retreating to the wall and the doctrine laid down in Com. v. Breyessee, 160 Pa. 451, have been superseded, and one attacked may advance in his defense if he deems it necessary (Com. v. Bouchet, 5 Pa. Dist. Rep. 343), and the necessity must appear from the defendant's standpoint: Murray v. Com., 79 Pa. 311; Pistorius v. Com., 84 Pa. 158.

It is the duty of the district attorney to produce all the evidence at the trial whether it be for or against the prisoner.

Several of the jurors were sick during the trial. One lay upon a cot attended by a physician. We submit that jurors sitting on trial for a man's life should at least be in their usual good health.

*A. Reed Hayes,* district attorney, and *Howard O. Lantz,* for appellee, were not heard, but in their printed brief said: The ingredients necessary to constitute murder of the first degree existed in this case: Lynch v. Com., 77 Pa. 207.

The charge was adequate: Com. v. Drum, 58 Pa. 16.

The law does not specify any particular period of time which is designated "cooling time" in homicide cases. What is "cooling time" is to be determined by the facts and circumstances of the case under investigation, and is a question for the jury: Com. v. Buccieri, 153 Pa. 535; Com. v. Breyessee, 160 Pa. 456; Com. v. Hare, 2 Clark, 467.

If the omission in the charge was detrimental to the prisoner's interests, his counsel should have called the attention of the court to it before the jury left the bar: Com. v. Zappe, 153 Pa. 501; Com. v. Boschino, 176 Pa. 115.

We do not think that the temporary and slight indisposition of the jurors and the administrations to them of a physician during the trial prejudiced the defendant's cause in the least. No physician or any other person was with the jury during any portion of their deliberation after they retired for deliberation: Alexander v. Com., 105 Pa. 12; Com. v. Jongrass, 181 Pa. 172.

OPINION BY MR. CHIEF JUSTICE STERRETT, Dec. 30, 1899:

This appeal by the prisoner is from the sentence of the law imposed on him by the court below for murder of the first degree, of which, after a fair and impartial trial, he was duly found guilty.

The first assignment of error alleges that "the ingredients necessary to constitute murder of the first degree do not exist in this case." This specification is under the 2d section of the Act of February 15, 1870, P. L. 15, which requires us, in all cases of murder of the first degree, "to review both the law and the evidence, and to determine whether the ingredients necessary to constitute murder of the first degree shall have been proven to exist." It thus becomes our duty to see whether competent evidence was introduced which, if believed by the jury, would furnish the elements or "ingredients" of that grade of murder. Whether the jury should or should not have believed and relied on the evidence is not for us to determine.

That question was considered and disposed of in the proper forum, on the motion for a new trial: Grant v. Com., 71 Pa. 495.

In this case, we have to deal only with that kind of murder of the first degree which is described in our statute as " wilful, deliberate and premeditated killing." No other kind of that grade is even suggested in the record. A consideration of the evidence, as well as the law, applicable to that grade of murder, is therefore required in disposing of the first specification.

The corpus delicti and the fact, that the mortal wound— which speedily caused the death of Harry Dougherty—was inflicted by the prisoner, were both so clearly and conclusively established by the evidence that there could be no doubt as to either.

The facts and circumstances which led up to the homicide are substantially these : The prisoner and Dougherty met for the first time at the stable of the hotel in Belleville, Mifflin county. In an effort to find some one to join him in a game of " poker " the prisoner spoke to Dougherty, who at first refused to play that game, but afterwards agreed to " match dollars " with him. This soon led to a dispute, and an altercation ensued which soon ended in blows. Dougherty finally knocked the prisoner down.

Charles, Wells, an eyewitness to the transaction, testified that after Dougherty " hit him (the prisoner) he walked back to the stable door and leaned back against it ; " that the prisoner " got up from where he was knocked down and came up about half .way to Mr. Dougherty. That was about six feet, I suppose. Then he turned around and went clear back to where he was knocked down, clear back to the buggy wheel. He then took and turned around and came clear back up to Mr. Dougherty. He had his right arm behind his back. He had his left arm on Mr. Dougherty's shoulder. Then Mr. Morrison fetche'd his right arm from behind his back and cut Mr. Dougherty."

That witness was fully corroborated by several others, one of whom, Charles Young, testified that when the prisoner was knocked down, " he laid for three or four minutes before he got up, and looked around, and he was stunned. He looked around, before he came up to Dougherty, to see where he was, and when he sighted him he walked right up to him. He asked

Dougherty what he hit him for, and then he just laid his left hand right on his shoulder, and cut him with his right."

Another witness, Albert S. Gibbony, testified: " I saw Morrison coming out of the crowd. He opened a knife and put it behind his back, walked through the crowd, walked up to the man that was Dougherty and stabbed him. . . . I saw him make a lunge at him."

Shannon Shook also testified that after the prisoner was knocked down " he turned around and came back to the stable door where Dougherty was then standing. He walked up to Mr. Dougherty, . . . . made a run towards him and threw his arm over his shoulder and stabbed him," with " his right arm, the knife . . . . He passed me going up to Dougherty." The witness further added that he then saw the knife in his hand; "He had it behind his back in his hand."

The foregoing testimony was further corroborated by the witnesses Hembaugh, Fleming and Sankey. The last named witness testified that, in reply to a question as to why he killed the deceased, the prisoner answered: " He struck me in the mouth." In this connection it may be added that the prisoner testified in substance that the stabbing was in self-defense.

Much other evidence, tending to prove that the mortal wound in question was inflicted by the prisoner substantially in the manner and under the circumstances testified to by the witnesses, might be referred to, but it is unnecessary. The evidence introduced and relied on by the commonwealth was abundantly sufficient to carry the case to the jury on all the questions of fact submitted to them by the learned president of the oyer and terminer: Commonwealth v. Drum, 58 Pa. 16; Lynch v. Commonwealth, 77 Pa. 207; Lanahan v. Commonwealth, 84 Pa. 80; Commonwealth v. Buccieri, 153 Pa. 535; Commonwealth v. Breyessee, 160 Pa. 456.

The learned judge's instructions to the jury, including his definitions of homicide, murder at common law, murder of the first and murder of the second degree under our statute, manslaughter, etc., were clear, impartial, comprehensive and free from any substantial error. Thirty requests for instructions, embracing every phase of the case, and the principles of law applicable thereto, were submitted by the prisoner's counsel, and all of them, except one, were affirmed by the court. Its

answer to that request has been accepted by counsel as containing nothing upon which to base a specification of error.

In affirming the prisoner's first seven, twelfth and twenty-seventh requests the court instructed the jury, in the language thereof, thus:

" 1. If the intent is not to kill, but to do great bodily harm, even if there be malice, deliberation and premeditation, the offense will not rise higher in grade than murder of the second degree.

" 2. A reasonable doubt as to the existence of malice is sufficient to reduce the grade of homicide to voluntary manslaughter.

" 3. To convict the prisoner of murder of the first degree, the jury must find he committed wilful, deliberate and premeditated murder, with malice aforethought, and each of these words must be found to apply to the crime.

" 4. While the law presumes every unlawful killing with malice, express or implied, to be murder, that presumption rises no higher than murder at common law, and murder of the second degree, and the burden is on the commonwealth to show by the testimony that it is murder of the first degree under our statute.

" 5. The burden of proof never shifts, but remains with the commonwealth throughout to prove beyond a reasonable doubt each and every, all and singular, the material averments in the indictment. If all of this is not clearly and satisfactorily shown, beyond a reasonable doubt, the jury should acquit.

" 6. Manslaughter is defined to be the unlawful killing of another, without malice, express or implied, which may be voluntary, in a sudden heat or quarrel, or involuntary, but in the commission of an unlawful act. If the jury find such offense, beyond all reasonable doubt, the verdict should be guilty of manslaughter.

" 7. It is necessary, in order to convict the prisoner of the crime charged in the indictment, or of any degree of murder or manslaughter, upon the evidence of circumstances, that such circumstances all concur to show that the defendant committed such crime, and that such circumstances are all inconsistent with any other rational conclusion. . . .

" 12. In this case, the law raises no presumption against the

prisoner, but every presumption of the law is in favor of his innocence ; and, in order to convict him of the crime alleged in the indictment, or of any lesser crime included in it, every material fact necessary to constitute such crime must be proved beyond a reasonable doubt, upon any single fact or element necessary to constitute the crime ; and it is your duty to give the prisoner the benefit of such doubt and acquit him. . . .

"27. If you find that the deceased, at or before the time the fatal blow was struck, was advancing towards the defendant in a menacing manner, or was striking at the defendant, or striking the defendant, and if the defendant at that time had reason to believe, and did believe, that he was in imminent danger of death or great bodily harm, then the defendant would be justified in such striking."

Acting under these and the fuller instructions contained in the learned judge's charge and affirmative answers to the prisoner's remaining requests, the jury doubtless had a clear conception of their duty in applying the law to the facts as they found them from the evidence ; and, in declaring by their verdict that the prisoner was "guilty of murder of the first degree," they must have found all the facts or "ingredients" necessary to constitute that high felony. In other words, they must have found that the killing was not done in justifiable self-defense, nor in a sudden transport or heat of passion generated by adequate provocation, but that it was done wilfully and maliciously, and with intent to take life. These conclusions were not unwarranted by the evidence as to what occurred at and about the time the stabbing was done, and also as to the nature and character of the wound and the manner in which it was inflicted. As shown by the evidence, after the prisoner was knocked down and after Dougherty walked away from him, he appears to have opened his knife, and thus armed with the open knife in his right hand behind his back he approached Dougherty, who was still standing at the stable door, laid his hand on his shoulder, asked him why he hit him, and without further warning drew the knife from behind his back, plunged into Dougherty's left thigh—nearly severing the femoral artery—and drew it across his abdomen. According to the physician's testimony, the wound was ten inches long, about five inches of it in the thigh, and about the same length across the

abdomen, deep enough in the thigh to partially sever the femoral artery, and deep enough in the abdomen to reach the peritoneum. The mortal wound thus inflicted was in a vital part of the body, and death speedily ensued. It has been said by this court that, "He who uses upon the person of another, at some vital part, with manifest intention to use it upon him, a deadly weapon, such as an ax, a gun or a knife, must, in the absence of qualifying circumstances, be presumed to know that it is likely to kill, and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act:" Lanahan v. Commonwealth, 84 Pa. 80, 86.

In view of what has been said, the first specification of error cannot be sustained.

A careful review of the law and the evidence has satisfied us that there was properly before the jury in this case competent evidence tending to prove all the facts or "ingredients" necessary to constitute the crime of murder of the first degree. That evidence, together with all the other evidence in the case, was rightly before the jury for their exclusive consideration in determining the facts submitted to them. The action of the trial court in denying the prisoner's motion for a new trial shows that it was satisfied with the jury's findings of fact, as well as their application of the law to the facts thus established.

The subjects of complaint in the second to the eighth specifications, inclusive, are to the charge of the court, mainly on the grounds that it was inadequate, not sufficiently specific, etc. We have already had occasion to refer at some length to the evidence, charge of the court, etc. As to the charge, we characterized it as "clear, impartial, comprehensive and free from substantial error;" and we may now add that it is neither inadequate, nor lacking in sufficient precision. The thirty requests for instructions submitted by the prisoner's counsel, nine of which are quoted above, were doubtless intended to cover every phase of the case as presented by the evidence. If additional instructions were required or desired they should have been requested: Commonwealth v. Zappe, 153 Pa. 498; Commonwealth v. Boschino, 176 Pa. 115. We find nothing in the record that would justify us in sustaining any of these seven specifications, nor do we think either of them requires further notice.

The ninth, tenth and eleventh specifications relate to single sentences taken from the general charge, and depend largely on the punctuation of the stenographer to sustain the objections of the prisoner's counsel. Considered in connection with the context and the charge generally as delivered by the court, they are free from error. In his opinion refusing the motion for a new trial the learned judge refers to and satisfactorily explains the stenographer's errors of punctuation.

It may be suggested, in passing, that such errors should be corrected by the court below before the record is certified to us.

There was no reversible error in not offering in evidence the garment referred to in the twelfth specification. There is nothing to indicate that the prisoner was in any way prejudiced by the commonwealth's omission; nor does it appear that it was not equally in the power of the prisoner to put it in evidence himself, if he so desired.

There is no merit in the thirteenth specification. What was done for the comfort and convenience of jurors who were temporarily indisposed during the trial was a matter resting in the sound discretion of the court, and there is not a particle of evidence to show any abuse of that discretion.

The fourteenth specification cannot be sustained. The clerical error of the court's officer in writing the wrong number of the term in recording the sentence did not in any way injure the prisoner.

In view of what the learned trial judge has said in his opinion denying the motion for a new trial, further comment on the specifications of error is not required. The case appears to have been carefully and ably tried on the part of the court as well as counsel. The responsibility of determining the facts and applying to them the law, as laid down by the court, devolved on the jury. Under the instructions given to them it was their exclusive duty to weigh and consider all the evidence, and determine whether the prisoner was guilty of murder of the first degree, or of murder of the second degree, or of manslaughter, or not guilty of any crime included in the indictment. That duty was fairly and forcibly enjoined upon them by the learned trial judge, in the concluding paragraph of his charge. That it was faithfully and conscientiously performed we have no reason to doubt.

We have given to this case that careful consideration which, in view of the gravity of the judgment, its importance to the prisoner demands, and the result is that we find no error in the record that would justify us in disturbing the verdict or the judgment entered thereon.

The judgment is therefore affirmed, and it is ordered that the record be remitted to the court below for the purpose of execution.