## John Cannon v. Territory. .

No. 55.   Opinion Filed January 29, 1909.

(99 Pac. 622.)

1.  INSTRUCTIONS—Homicide—Grade or Degree of Offense—Questions for Jury.  In a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests; and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends to prove should be submitted to the jury, whether it be requested on the part of the defendant or not.  It is the duty of the court to say, as a matter of law, if there is any evidence that would tend to reduce the degree of the offense to manslaughter in the second degree.

2.  EVIDENCE—Character of Defendant—Weight and Effect of Evidence —Instructions.  The weight of the evidence tending to prove the good character of the defendant is for the jury, who, in arriving at their verdict, should consider it the same as any other evidence in the case; and, where the court, in giving a general character instruction, adds: "And if after a careful consideration of all the evidence in the case, including that bearing upon his previous good character, the jury entertain any reasonable doubt of the defendant's guilt, then it is their sworn duty to acquit him; but if, on the other hand, you believe from the evidence beyond a reasonable doubt that the defendant committed the crime in question, as charged in the indictment, it will be your sworn duty as jurors to find the defendant guilty, even though the evidence may satisfy your minds that the defendant previous to the commission of the alleged crime had sustained a good character for being a law-abiding and peaceable citizen."—held not misleading nor erroneous.

3.  INSTRUCTIONS—Reasonable Doubt.  It is not reversible error, in a prosecution for murder, to define reasonable doubt in a series of instructions, the definition as a whole being correct, rather than to embody the entire definition in one instruction; no prejudice from the practice appearing.

4.  WITNESSES—Cross-Examination to Discredit—Specific Acts.  A witness for the defendant may be cross-examined as to specific acts tending to discredit her, when such facts are relevant to the issue.

5.  TRIAL—Misconduct of Prosecuting Attorney—Improper Questions.  The defendant, in a murder case on appeal, cannot predicate error on misconduct of the prosecuting attorney in asking improper questions, where the court sustained the objections as made, and where no request was made to the court to instruct the jury not to consider the same.

(Syllabus by the Court.)

*Error from District Court, Blaine County; M. C. Garber, Judge.*

John Cannon was convicted of manslaughter in the first degree, and brought error to the Supreme Court of Oklahoma, whence the cause was transferred to the Criminal Court of Appeals. Affirmed.

John Cannon, plaintiff in error (hereinafter referred to as the defendant), was indicted in the district court of Garfield county, on December 15, 1906, charged with having murdered one Thomas A. Radford on January 10, 1906. The defendant was duly arraigned, and filed his motion to quash and set aside the indictment. On January 15, 1907, upon a hearing had, said motion was by the court overruled, and exception allowed. Whereupon the defendant filed his demurrer to the indictment, which demurrer was by the court overruled, and exception allowed. Thereupon the defendant refused to plead, and the court caused the plea of not guilty to be entered. Thereafter, on the 18th day of February, 1907, the defendant filed, in due form, his petition for a change of venue, upon the ground that a fair and impartial trial could not be had in Garfield county. Said petition coming on to be heard before the court on February 21, 1907, it was by the court ordered that the venue be changed to Blaine county, Okla. T., and directed the clerk of said court to make out, and within three days transmit to Blaine county, a certified order of removal, together with all the records and pleadings in said case, and ordered the removal of the defendant to the custody of the sheriff of Blaine county. Thereafter a trial was had in the district court of Blaine county, and on March 7, 1907, the jury in said case returned a verdict, finding the defendant guilty of manslaughter in the first degree. The defendant filed his motion for a new trial, which motion was by the court, on the 15th day of March, 1907, overruled, and exception allowed. Thereupon the court sentenced the defendant to imprisonment for a term of 40 years at hard labor in the territorial prison. To which judgment and sentence the defendant duly excepted. The defendant perfected an appeal to the Supreme Court of

Oklahoma, and the cause was transferred by the Supreme Court of Oklahoma to the Criminal Court of Appeals, as by law provided, and is now before this court for review.

*H. J. Sturgis* and *Guy S. Manatt,* for plaintiff in error.—

On refusal of court to charge on manslaughter in the second degree: *Lawson v. Territory* (Okla.) 56 Pac. 698; *Territory v. Nichols,* 2 Pac. 78.

On question of charge on good character: *State v. Van Kuran* (Utah) 69 Pac. 60; *Commonwealth v. Cleary,* 125 Penn. 64; *People v. Garbutt,* 17 Mich. 9.

On question of charge on reasonable doubt: Blashfield's Instructions to Juries, sec. 290; *Cowan v. State,* 22 Neb. 519; *Morgan v. State,* 48 Ohio St. 371; *Thomas v. State,* 126 Ala. 4; *Klyne v. State,* 78 Miss. 450.

On question of impeachment by proof of specific acts of wrong-doing: *Woodward v. State* (Texas) 58 S. W. 135; *Moulton v. State* (Ala.) 6 L. R. A. 301.

*Charles West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen. for the State.—

On question of failure to charge on manslaughter in second degree: Wharton on Homicide (3rd Edition Bowlby) pp. 241, 247; *Gardner v. State,* 90 Ga. 310.

On question of good character charge: Bishop's New Crim. Proc., § 1116; Sackett's Instructions to Juries (2nd Ed. Newell) pp. 652, 653.

Latitude of cross-examination to impeach witness: 7 Ency. of Ev. 171, 175; *Shepard v. Parker,* 36 N. Y. 577; *State v. Coella,* 3 Wash. 99; *State v. Hill,* 52 W. Va. 296; *State v. Abbott,* 65 Kan. 139; *Sage v. State,* 127 Ind. 15; *Brittain v. State* (Texas) 85 S. W. 278; *People v. Webster,* 139 N. Y. 73; *State v. Hack,* 118 Mo. 92; *Lewis v. Steiger,* 68 Cal. 200; *Georgia v. Lybrand,* 99 Ga. 421.

DOYLE, JUDGE, (after stating the facts as above). The record of the proceedings in the trial court is voluminous, consisting of over 900 pages without an index. We have, however,

carefully examined the entire record, together with the several assignments of error, which counsel for the defendant, in their brief and argument, group into three assignments, which we will now consider, and state our conclusions thereon in the order named and argued in the defendant's brief.

The first assignment is "error of the court in its instructions to the jury." The court instructed the jury as to the indictment and the plea entered, and defined the terms, "homicide," "murder," and "manslaughter in the first degree"; also what constituted excusable and justifiable homicide, but refused to define manslaughter in the second degree, and refused to give the following instruction requested by the defendant, the same being instruction No. 54:

"Instruction No. 54. The jury are instructed that every killing of one human being, by the act, procurement, or culpable negligence of another, which, as defined in these instructions, is not murder, nor manslaughter in the first degree, nor excusable or justifiable homicide, is manslaughter in the second degree. (Offered by defendant, refused, and excepted to. M. C. Garber, Judge.)"

Counsel for the defendant earnestly argue that the refusal to give this instruction is clearly erroneous, and sufficient to reverse the judgment, and quote section 5490, Wilson's Rev. & Ann. St. 1903, which reads:

"(5490) 354. When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only."

Also section 5487, Wilson's Rev. & Ann. St. 1903, which reads:

"(5487) 351. On the trial of an indictment, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive the law which is laid down as such by the court."

And in support of this contention they cite the case of *Lawson v. Territory of Oklahoma*, 8 Okla. 1, 56 Pac 698, and the

cases therein cited. This case, we believe, is clearly distinguished from the case at bar. In that case the court instructed the jury as follows:

"You are instructed that in this case there is no evidence to support or justify a verdict of manslaughtr in the first degree, manslaughter in the second degree, or excusable homicide; and, under the evidence in this case, I instruct you, as a matter of law, that your verdict must be that the defendant is guilty of the crime of murder, as charged in this indictment, or that the killing of deceased by the defendant amounted in law to justifiable homicide, as in these instructions defined, and that the defendant is not guilty."

This instruction so given was duly excepted to, and assigned as error, and was by the Supreme Court of the Territory of Oklahoma held to be reversible error. Justice Burwell, expressing the opinion of the court, in part, says:

"The trial court seems to have proceeded upon the theory that, if the homicide was proved beyond a reasonable doubt to have been committed by the defendant, it was the duty of the defendant to introduce evidence to show that it was only manslaughter. This is true in this territory by virtue of our statutes. Section 5515, Wilson's Rev. & Ann. St. 1903, provides: '(5515) 379. Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.' As to whether or not a court can, in a case where there is no evidence tending to reduce the killing below murder, instruct the jury that they should either find the defendant guilty or acquit him is not presented in this case, and we will not determine that question; but, inasmuch as there was some evidence tending to reduce the killing below murder, we think that the instruction given by the trial judge, directing the jury to find the defendant guilty of murder or acquit him, was incorrect."

Thus we see the case relied on by counsel does not, in any way, support their contention. The only material question is, Does the evidence in the case show, or tend to show, any of the elements or ingredients of manslaughter in the second degree?

A careful examination of the entire record discloses that there was no such evidence offered. The testimony introduced on the part of the territory proved, or tended to prove, a case of deliberate, premeditated, cold-blooded murder.

The testimony of several witnesses who were eyewitnesses of the tragedy is, in substance, as follows: The deceased, Thomas A. Radford, who was city marshal of Enid, was standing, warming his hands by a radiator in the Tony Faust Saloon, having his gloves on and his overcoat buttoned up. The defendant stepped up to him, and without a word of warning, shot him in the breast, whereupon the deceased turned and ran out of the door onto the sidewalk. The defendant, pursuing the deceased, shot him again in the back as he was passing through the door, then, overtaking him some distance from the door, grabbed him by the arm, and shot him in the temple. The deceased falling from the sidewalk into the street in a dying condition, the defendant attempted to again shoot him in the head, when a bystander interfered and took his revolver from him. There is no conflict in the testimony concerning the tragedy after the firing of the first shot. The testimony further shows that the defendant had several times previously threatened to take the life of the deceased.

The defendant has attempted to justify the killing on the ground of self defense. Testimony was introduced, proving or tending to prove, that the deceased, Thomas A. Radford, had several times, on different occasions, threatened to take the life of the defendant; and the defendant, testifying, stated that the deceased moved his hands as though he was trying to get his gun, before he (defendant) fired the first shot. An abortive attempt was also made to invoke the unwritten law, more as a matter of extenuation, or in mitigation of the offense, than as a defense.

In cases of this kind we believe it is the duty of the court to say, as a matter of law, if there is any evidence that would tend to reduce the grade of the offense to manslaughter in the

second degree.  Assuming the facts to be as claimed by the defendant in this regard, and as shown by the testimony offered on his behalf, we believe the court properly held that there was no testimony tending in any way to reduce the grade of the offense to manslaughter in the second degree.  This court, in the case of *Vickers v. United States, ante,* p.—, 98 Pac. 467, stated the rule in capital cases as follows:

"Whenever the evidence warrants it, the duty of the court is to instruct the jury upon the other offenses included in the crime charged."

In the case at bar counsel do not claim that there is any evidence that tends to reduce the offense charged to manslaughter in the second degree.  They argue that under the provisions of our statute it is the duty of the trial court to instruct the jury in relation to all the degrees of the crime of murder, as charged in the indictment, and that it is for the jury alone, in passing upon the weight and credibility of the testimony, to say whether the facts in evidence do or do not constitute manslaughter in the second degree.

In the case of *Territory v. Nichols,* 3 N. M. 103, 2 Pac. 78, cited by counsel in support of their contention, the court quotes the rule as stated in Bishop's Criminal Procedure, § 980, and approves the same.  It is as follows:

"The charge should state the law in its application to the facts as already explained, clearly and fully.  If, for example, there are different degrees of an offense, the law of each degree which the evidence tends to prove should be given, but not of any degree which it does not tend to prove."

In that case the court only quoted the law applicable to murder in the first and second degrees, and the court held the instructions erroneous because there was evidence tending to show that the crime was murder in the fourth degree.

Mr. Wharton says:

"The province of the court, on an issue as to the degrees of a homicide, is to guide and direct the jury, and keep them within proper bounds.  It is its duty to determine whether competent evidence has been introduced, which, if believed by the

jury, would furnish the elements or ingredients of any particular grade of homicide." (Wharton on Homicide [3d Ed.] p. 241, citing *Com. v. Morrison*, 193 Pa. 613, 44 Atl. 913, and *State v. Ellis*, 74 Mo. 207.)

"And it is for the court to decide what grade or grades of homicide the evidence tends to establish, and it should confine itself, in instructing the jury, to such grade or grades"—citing *State v. Estep*, 44 Kan. 572, 24 Pac. 986, *State v. Ryno*, 68 Kan. 348, 74 Pac. 1114, 64 L. R. A. 303, and *Gardner v. State*, 90 Ga. 310, 70 S. E. 86, 35 Am. St. Rep. 202.

We believe the court rightfully ruled in refusing to give the instruction requested.

It is also argued that the court below erred in instructing the jury on the law of character evidence. The court instructed the jury as follows:

"Instruction No. 27. In this case the defendant has introduced evidence to show his previous good character for being a law-abiding, peaceable citizen, and you are instructed that such evidence is competent in favor of the defendant, as tending to prove that he would not be likely to commit the crime alleged against him, and if you believe from the evidence that prior to the commission of the alleged crime the defendant had always borne a good character for being a peaceable and law-abiding citizen among his acquaintances, and in the neighborhood where he lived, then this is a fact proper to be considered by the jury, with all the other evidence in the case in determining the question of whether the witnesses who have testified to facts tending to criminate him have been mistaken or have testified falsely or truthfully, and if, after a careful consideration of all the evidence in the case, including that bearing upon his previous good character, the jury entertain any reasonable doubt of the defendant's guilt, then it is their sworn duty to acquit him; but if, on the other hand, you believe from the evidence, beyond a reasonable doubt, that the defendant committed the crime in question, as charged in the indictment, it will be your sworn duty as jurors to find the defendant guilty, even though the evidence may satisfy your minds that the defendant, previous to the commission of the alleged crime, had sustained a good character for being a law-abiding and peaceable citizen"—to which instruction defendant duly excepted.

The defendant requested the following instruction, being instruction No. 45:

"Instruction No. 45. The court instructs you that evidence of previous good character is competent evidence in favor of the defendant, as tending to show that he would not be likely to commit the crime charged against him, and, if the jury believe from the evidence that, prior to the ·charge in this case, the defendant has always borne a good character, as a peaceable, orderly man in the community where he lived, then it is a fact proper to be considered by the jury, with all the other evidence in the case, in determining the question whether the witnesses who have testified to facts tending to criminate him are mistaken or have testified falsely or truthfully; and if, after a careful consideration of all the evidence in the case, including that bearing upon previous good character, the jury entertain any reasonable doubt of the defendant's guilt, then it is their sworn duty to acquit him. (Offered by defendant and refused; exceptions. M. C. Garber, Judge.)"

We believe the court rightfully rejected, and properly refused to give, the foregoing instruction as requested. The instruction as given by the court is possibly subject to criticism, but ·under the proof in the case, and no sufficient instruction having been offered, we do not 'believe counsel's contention that the aforesaid instruction No. 27 is erroneous and misleading is well founded.

Counsel cite, and seem to rely upon, the Utah case of *State v. Van Kuran*, 25 Utah, 8, 69 Pac. 60. In that case the defendant was prosecuted for embezzlement. The proof was wholly circumstantial, and related to various entries in the books of defendant as treasurer of the corporation, to which others also had access. Bartch, Judge, rendering the opinion of. the court, in part, says:

"Considering this with the previous instructions ·limiting the effect of the proof relating to good character, it was calculated to lead the jury to infer that, if from the criminating evidence they believed the prisoner guilty, they must discard the evidence of good character. The instructions must be regarded as misleading and erroneous, ·for the accused had the right to have such testimony considered, in determining the

question of his guilt or innocence, the same as any other evidence in the case. So the accused had the right to have the jury charged that in determining whether or not he was guilty, as charged in the information, beyond a reasonable doubt, his good character, so far as involved, if proven, should be considered and weighed the same as any other fact established, and that in itself might not only create a reasonable doubt of guilt, which might not otherwise be established, but might carry conviction of innocence."

In the case at bar a large part of the character evidence offered related to a time remote from the killing. That offered, covering a period of several years that defendant lived in Garfield county, consisted of the testimony of persons interested in the defendant's defense, and a paradoxical proposition was presented by the fact that several of the character witnesses were persons who testified on the defendant's behalf in securing a change of venue from Garfield county, on the ground that the minds of the people of Garfield county were so prejudiced against the defendant that he could not have a fair and impartial trial therein.

Mr. Bishop states the rule to be as follows:

"The weight of the evidence tending to prove the good character of the defendant is for the jury, who in arriving at their verdict should consider it, not as something detached from the proof, but in combination with it all. Consistently herewith the court may, and commonly does, make to them pertinent observations varying with the case, as that a good character can have little practical effect against direct and otherwise satisfactory proofs; cannot turn the scale against conclusive evidence of guilt; will not justify a verdict of not guilty if the jury are convinced of guilt beyond a reasonable doubt." (Bishop's New Crim. Proc. § 1116.

Measuring the instructions complained of by the foregoing rule, it cannot be said that the defendant could have been prejudiced thereby under the facts in this case. The instruction states that evidence of previous good character of the defendant is competent, for the separate and distinct purpose therein stated, to prove, or as tending to prove, that he would not be likely to

commit the crime alleged against him, and to assist the jury in ascertaining whether the witnesses on the part of the territory had been mistaken, or had testified truthfully or falsely. In view of the convincing character of the testimony presented by the prosecution against the defendant, we do not think we would be justified in holding that the instruction, as given, was misleading and erroneous to the extent of being prejudicial to the rights of the defendant.

It is also contended that the court erred in giving the instructions defining "reasonable doubt." The court gave three distinct instructions defining reasonable doubt, being Nos. 28, 29, and 30. Counsel admit that No. 28 is a correct instruction, but argue that the effect of it is destroyed by instruction No. 30. The instructions read as follows:

"No. 28. A reasonable doubt is that state of the case which, after a full, fair, and impartial comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty, of the truth of the charge; that is to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it.

"No. 29. The jury are instructed that it is not their duty to go outside of the evidence to hunt up doubts nor to entertain such doubts as are merely chimerical and conjectural. A doubt to justify an acquittal, must be reasonable, and it must arise from the evidence, or lack of evidence, in the case. If after a careful and candid consideration of all the evidence in the case, the jury can say, on their oaths as jurors, and on their conscience as men, that they have an abiding faith of the truth of the charge as contained in the indictment, amounting to a moral certainty, then they are convinced beyond a reasonable doubt. (Defendant excepts. B. B. and B. & D., Attys. for Def.)

"No. 30. If after a careful comparison and candid consideration of all the evidence in the case, you have a doubt of the defendant's guilt, it will be your duty to determine whether such doubt is reasonable and sufficient in law to acquit the defendant. And, if after applying the law defining such doubts,

as laid down in these instructions, you find that the doubt in question is not a reasonable one, then it will not be sufficient in law to acquit the defendant. A doubt, to justify an acquittal, must be a reasonable one, and it must arise from a careful and candid investigation of all the evidence in the case; and unless the doubt is a reasonable one, and does so arise, it will not be sufficient in law to authorize a verdict of not guilty. (Defendant excepts. B. B. and B. & D., Attys. for Def.)"

And, while we believe that the foregoing instructions on the subject of reasonable doubt were clear, impartial, comprehensive, and free from substantial error, we think that the correct rule has been enunciated by this court, in the case of *Price v. Territory, ante,* p.—, 98 Pac. 447, wherein it was held that it is a dangerous practice for courts to attempt to explain the meaning of the term "reasonable doubt," and also in the case of *Douglas v. Territory,* decided at this term, *ante,* p.—, 98 Pac. 1023, wherein this court, in the syllabus, says:

"The phrase 'beyond a reasonable doubt,' used in the statute in establishing the measure of proof necessary to warrant a conviction in a criminal case, is not a technical term, and needs no explanation from the courts in instructing juries. An instruction on this subject in the language of the statute is all that the court is required to give. It is a dangerous thing for the courts to attempt to go further."

Mr. Blashfield, in his excellent work on Instructions to Juries, § 290, says:

"Definitions of 'reasonable doubt' should not be risked in criminal trials, and the juror should be allowed to have his own conception of what a 'reasonable doubt' is to him, not to the prosecutor or the court; and he should not be under any legal compulsion to have, or be able to formulate and state, a reason which may raise a reasonable doubt in his mind or conscience."

This, we believe to be the correct rule; and, in the case at bar, while the trial court added the explanatory instructions, he correctly stated the law, and we cannot believe that the defendant was prejudiced thereby.

No other assignments of error are urged by defendant's counsel, based on the giving of, or refusal to give, instructions.

However, we have carefully considered all the instructions as given, and our conclusion is that the court has therein fully, fairly, and correctly stated the law of the case.

Second. "Errors of the court, during the progress of the trial, in the admission of testimony offered by the prosecution and the exclusion of testimony offered by the defendant." Under this assignment counsel for the defendant contends that the trial court erred in permitting the prosecution to cross-examine certain witnesses for the defendant on matters going to the question of the chastity and moral character of the wife of the defendant and the witness May Baser, and in their brief, without citing any authorities, conclude by saying:

"Apparently the court permitted this testimony to be introduced for the purpose of aiding the jury in arriving at the character of the house kept by the defendant and his wife. If this was the purpose, it was wholly incompetent."

We think that the cross-examination was properly permitted. The proof on behalf of the prosecution tends to show that the motive for the killing was malice, resentment, and revenge because the deceased, in his official capacity as city marshal, had sought to suppress and prevent the defendant and his wife from conducting a rooming house in the city of Enid, which the proof shows to have been a place of ill repute, to say the least. In doing this the deceased was carrying out the express instructions of the mayor and council of said city.

The defendant sought to show by the testimony of his wife that the deceased, who was a married man living with his wife and six children, becoming acquainted with the witness shortly after his election as city marshal, continuously made indecent and improper proposals to her, both before and after her marriage to the defendant (which occurred in the month of August prior to the homicide); and that this conduct on the part of the deceased continued up to a short time before his death. The defendant's wife also testified that the other peace officers, who were witnesses for the territory in the case, were guilty of similar misconduct towards her. All of this testimony was admitted

over the objection of the prosecution. The testimony presented by the record shows that the defendant up to about eight months prior to the homicide, was the jailer in charge of the Garfield county jail; that, becoming acquainted with the witness while she was incarcerated in said jail, by reason of his misconduct with her, was discharged. He then took up his abode at the rooming house of the witness marrying her in the month of August preceding the homicide; that on one occasion the deceased and the sheriff of Garfield county, being called to witness' rooming house by reason of the death, by shooting of a man there, they found the body in or near the door of the room occupied by the witness May Baser. The defendant then and there assaulted the deceased, this being a few months prior to his killing deceased. All of this testimony was properly admitted, as these facts were so closely connected and interwoven with the final tragedy as to form a chain of facts tending to explain a motive, and to disprove facts sought to be proven by the defense.

It is an axiom of law of evidence that all facts having rational probative value are admissible unless some specific rule forbids. In the case of *Austin v. State,* 14 Ark. 555, Scott, J., says:

"It is certainly true, as a general rule, both in civil and criminal cases, that the evidence must be confined to the point in.issue; and in criminal cases there is, perhaps, a greater necessity, if possible, than in civil proceedings to enforce the rule. But in neither class of cases does this rule exclude all evidence that does not bear directly upon the issue. On the trial all evidence is admissible which tends to prove it, and no facts are forbidden to be shown except such as are incapable of affording any reasonable presumption or inference in elucidation of the matters involved in the issue."

"The fact that the incidental effect of the cross-examination is to degrade the witness examined does not render it improper. The fact that witness may refuse to answer the questions on the ground that it incriminates him is no sufficient objection. Nor does the fact that a cross-question put to a witness as to particular acts of misconduct may tend also to impeach another wit-

ness in an unauthorized manner render it any the less proper."
(Ency. of Ev. vol. 7, p. 179.)

"Any act on a witness' part in connection with the subject-
matter or trial of the cause may be proved to impeach him, by
a party entitled to do so." (*Lewis v. Steiger,* 68 Cal. 200, 8 Pac.
884; *Georgia v. Lybrend,* 99 Ga. 421, 27 S. E. 794.)

In the case of *State v. Coella,* 3 Wash. 99, 28 Pac. 28, the
court used this language:

"If she chose to answer, and admit that she had wantonly
violated the restraints and passed outside the limits which
religion, society, and the law have long established for woman's
welfare and protection, her testimony would have been seri-
ously impaired. She could not have ruthlessly destroyed that
quality upon which most other good qualities are dependent,
and for which, above all others, a woman is reverenced and
respected, and yet retain her credit for truthfulness unsmirched."

"A witness may be asked on cross-examination whether
she did not keep girls for the purpose of prostitution." (*State v.
Hack,* 118 Mo. 92, 23 S. W. 1089.)

It was competent for the prosecution to cross-examine the
witness as to her antecedents, vocation, character, and past con-
duct, and thus impair her credibility. This line of inquiry be-
came important because, the court having permitted the witness
to testify as to the conduct of the deceased towards her, all of
the circumstances surrounding the case justified a full cross-
examination as to her past conduct and character, and as to the
past conduct and character of the witness May Baser, who was
her associate in conducting said rooming house. There is no
better method of sifting the conscience and testing the veracity
and credibility of the witness than by cross-examination, and
a witness can also be cross-examined as to specific acts tending
to discredit her, when such facts are relevant to the issue. There
is 'no occasion here to discuss this question further than to say
that we believe that, as the case was being tried in a county
where the witnesses were all comparative strangers, and as the
defendant injected this issue into the case, and thereby attempted
to cast reflections upon and besmirch the character of the de-

ceased and the peace officers who were witnesses for the prosecution, the court properly held that the prosecution had the right to show the moral character of the witness and her meretricious conduct and mode of life.

Third. "Error of the court in permitting the prosecuting attorney to ask incompetent and prejudicial questions of the witness." The following excerpt from the brief of counsel for the defendant shows the record upon which this assignment of error is based:

"Dr. O. P. Kernodle, a witness produced for the purpose of impeaching the testimony of Dr. Schwartz, was interrogated by the county attorney in the following entertaining manner. Q. Are you able to state—do you know—his general reputation in Enid?' Q. What is his general reputation, good or bad?' 'Q. For general character?' 'Q. What is his general reputation for honesty?' This last question was objected to and overruled 'as to honesty.' 'Q. From your observation, can you say, as a physician, whether he is probably a dope fiend?' 'Q. That is, a taker of cocaine, or morphine?' 'Q. Can you say what are the outward evidences, the visible evidences, or do you know what they are, of a person who takes cocaine or morphine?' ' Proper objections were made to these questions, but the court remained silent. The situation, however, required some explanation, and accordingly the county attorney, in the presence of the jury, and over the objection of the defendant, made this somewhat startling offer: 'The counsel for the territory wishes to prove by these witnesses— this witness—that a person who takes such drugs that it affects his moral nature so that he becomes irresponsible and unveracious, and is not to be trusted, and it degenerates his moral character—' This statement ends with a dash, indicating that the county attorney had more of the same kind on hand. This is manifest by that which follows: The witness was then asked if he had ever talked with Dr. Schwartz about his life, and the county attorney then proceeded: 'Q. Can you say from what you have seen of him—from your knowledge as a physician—are you prepared to say what his moral nature is?' 'Q. Does the moral nature of a person influence his likelihood to tell the truth?' 'Q. Is it possible to judge of a man's mental process and his moral process—for a physician to judge—that is, who is acquainted with the things he does and says?' 'Q. Can a physician, and

is there any learning in medicine that allows a physician to judge of the truth-telling capacity of a person, when he has made observations of his morals?'

"The court sustained objections to all of these questions, but did not admonish the county attorney to desist, nor advise the jury that the conduct of the county attorney was improper, and that they should not consider the matters assumed in the questions asked, and this, we think, was highly prejudicial to the rights of the defendant. The county attorney did not desist after asking the foregoing metaphysical questions, but proceeded to inquire as to the general reputation of Schwartz as to sobriety and dissoluteness, and, as a parting shot, propounded the following, which we commend as being worthy of a place among the great hypothetical questions: 'Q. Does the question of sobriety, dissoluteness of living, or the taking of drugs, such as morphine or cocaine, as a medical fact, bear upon the truth-telling capacity of a person?' In the case at bar the court merely sustained the objections to the questions without comment, without any admonition to the prosecutor to desist, nor were the jury cautioned not to consider the matters suggested by the questions ruled out by the court."

The record shows that the witness Dr. Schwartz, as a witness for the defendant, testified that he was present at the time of the killing, and his testimony tended to corroborate that of the defendant to the extent that the deceased made a motion as though he was going to unbutton his overcoat. The record shows that the prosecution introduced evidence tending to impeach this witness, and tending to show that he was not present when the killing occurred, and that he had been drinking to such an extent as to impair his ability to see and apprehend what happened at the time of the tragedy, and that he had made statements inconsistent with his testimony. All of this testimony was competent; and, while any diseased impairment of the testimonial powers, arising from whatever source, may be considered by the jury, if its presence is apparent, it must be left to be shown by cross-examination. On principle, no hypothetical question is permissible, based on habit, to test veracity or credibility. The objections made were properly sustained by the court; but, as

no motion was made on behalf of the defendant to withdraw from the consideration of the jury the questions and remarks of the prosecuting attorney now complained of, we cannot believe that his able and distinguished counsel thought his rights might be prejudiced thereby, and we are of the opinion that the defendant was not prejudiced thereby.

While the record discloses some irregularities, we believe that the defendant had a fair trial. The facts and circumstances, as shown by the evidence, are so conclusive as to the guilt of the defendant that no honest jury could fail to convict him of the crime. The record is conclusive that the irregularities complained of could not have changed the final result.

There being no prejudicial error shown by the record, the judgment of the district court of Blaine county, Okla. T., is affirmed, at the cost of plaintiff in error, and the district court of Blaine county, Okla., is directed to proceed and have the judgment and sentence carried into execution.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.