## Commonwealth *v.* Diaco, Appellant.

*Appeals—Practice, Supreme Court—Assignments of error—Exceptions—Charge of court—Part of sentence—Criminal law—Murder.*

1. Assignments of error cannot be considered unless they have exceptions to support them.

2. A fraction of a sentence in the charge of the court cannot properly be assigned as error.

3. In considering whether there was sufficient evidence to convict a defendant of murder of the first degree, the Supreme Court must accept as true all the evidence from which the jury might have found the murder was wilful, deliberate and premeditated.

Argued October 13, 1919. Appeal, No. 334, Jan. T., 1919, by defendant, from judgment of O. & T. Delaware Co., Sept. T., 1917, No. 262, on verdict of guilty of murder of the first degree in case of Commonwealth v. Domenico Diaco. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Indictment for murder. Before JOHNSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree, upon which the court passed sentence of death. Defendant appealed.

*Errors assigned* were as stated in the opinion of the Supreme Court.

*John DeH. White,* for appellant.

*John B. Hannum, Jr.,* District Attorney, with him *William Taylor* and *Wm. J. MacCarter, Jr.,* Assistant District Attorneys, for appellee.

OPINION BY MR. JUSTICE SIMPSON, December 31, 1920:

Appellant was indicted for the murder of Vincenzo Lucia, was tried, convicted of murder of the first degree, and sentenced to death. He appeals to this court, and assigns but one error relating to the taking of the testimony, viz: "The court erred in having an interpreter who could not thoroughly understand the dialect of the defendant and express himself properly in English." It appears from the record that the interpreter referred to was the one regularly used in the court, and that he and another, then present, disagreed regarding the true interpretation of certain answers of defendant given in the Italian language; but there is nothing to show which was correct, and, so far as appears, defendant made no request to have a different interpreter used, and took no exception touching the matter. The assignment must, therefore, be overruled.

Defendant also assigns as error the following language in the charge of the court: "If you find that this threat [of decedent] and the attempt to draw this pistol, if it was so,—remember the Commonwealth denies all this—" In this excerpt the court below was referring to the evidence of defendant himself, which directly contradicted that given by the State's witnesses, and hence the caution "remember the Commonwealth denies all this," which is the only thing complained of, was not objectionable; even if a fraction of a sentence could properly be assigned as error.

The final question is: "Was there sufficient evidence offered by the Commonwealth to convict of murder in the first degree?" Section 2 of the Act of February 15, 1870, P. L. 15, requires us to carefully consider this matter; but in so doing we must accept as true all the evidence in the case from which the jury might have found the murder was wilful, deliberate and premeditated: McGinnis v. Com., 102 Pa. 66; Com. v. Morrison, 193 Pa. 613. This renders ineffective much of appellant's

argument, and materially narrows the scope of the inquiry raised by the assignment.

The evidence produced by the district attorney showed that, on several occasions before the day of the murder, deceased and defendant had quarrelled, and at one time the latter had said: "If the old man will insult me I will shoot him;" and at another: "If he ever puts his hand in his pocket I will shoot him before he takes it out." On the day of the murder they and others were at the house of Joe Diaco, who was defendant's brother and deceased's son-in-law. A dispute arose between deceased and Joe Diaco, they grappled, the wife of Joe called for help, and defendant rushed in, separated them and put deceased out of the house. Defendant had some words with and struck his brother, whereupon the latter went upstairs and got a pistol, which defendant took away, saying: "You get out and I'll tend to him," meaning deceased. The latter, defendant and a third party named Bellano, then went to the railroad station to inquire about a train for Philadelphia, where deceased lived. As they passed defendant's home, he left them and the others went on without him. There being no one then at the station to give the information desired, they returned, met defendant on the way, and the three entered his house. After staying there about twenty minutes, Bellano and deceased left defendant and again went to the railroad station. While deceased was standing on the platform thereof, awaiting the return of Bellano, who had gone into the station to inquire about the train, defendant came hurrying up, hatless, coatless and shirt-less, with the sleeves of his undershirt rolled up and his hand in his hip pocket, and without saying anything to deceased, immediately shot him, then shot him again after he fell, both shots being in a vital part of the body, and stood over him prepared to shoot a third time. Seeing death had resulted he ran away, but later returned to his home for his hat and a change of clothing, and while there produced and laid on the table three pistols,

one of which was his own, the second his brother's and the third decedent's and they were then picked up by another party, who threw them into the woods in the rear of the house, where they were found a short time afterwards; the one belonging to defendant having two discharged cartridges in it, while the others were still fully loaded. After getting his hat and changing his clothing, defendant renewed his flight and was not discovered and arrested until about four months later.

Defendant's story was that, while theretofore he had had disputes with deceased, he had made no threats, but deceased had; when he interfered between his brother and deceased, at his brother's home, deceased was apparently trying to draw his revolver, and for that reason defendant took it away from him and kept it, as he did also his brother's pistol; when they were returning from the railroad station the first time, at deceased's request he slipped into the latter's coat pocket what he supposed was deceased's revolver, but, when the others went to the station the second time, he discovered he had mistakenly given his own pistol to deceased, and hence hurried to make an exchange thereof; after it was effected deceased demanded the sum of $100, threatened to kill defendant if it was not given, and made a motion as if to draw the revolver which had been returned, whereupon, in self-defense, he shot deceased twice while the latter was still standing; when deceased was falling his revolver dropped on the platform, defendant picked it up, and with it and the other two, which he still had, returned to his home for his hat and clothing, and then wandered to various places in this country and Canada, until the time of his arrest. In other respects his testimony coincided with that of the Commonwealth.

On this appeal no question is raised touching the adequacy or accuracy of the charge, and hence, so far as we are concerned, the verdict conclusively determines that the Commonwealth's story regarding the murder is true and defendant's is not; and from it, and the inferences

fairly deducible therefrom, it is clear the question as to whether or not he was guilty of murder in the first degree was for the jury and not for the court; and, under the authorities above cited, the judgment and sentence are not subject to revision by us.

The assignments of error are all overruled, the judgment and sentence of the court below are affirmed, and the record is remitted for the purpose of execution.