Commonwealth *v.* Blanchard, Appellant.

Argued April 27, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Milton S. Leidner,* with him *Joseph F. M. Baldi,* for appellant.

*Ephraim Lipschutz,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE STERN, May 11, 1942:

Defendant was convicted of murder of the first degree and the jury fixed death as the penalty. The assignments of error on the present appeal relate mostly to alleged inadequacies of the charge to the jury in regard to the presumption of innocence, the character and force of circumstantial evidence, the probative value of confessions, the elements of second degree murder, and the sufficiency of the proof of alibi; there is also a criticism of what the trial judge said concerning the presumption arising from the use of a deadly weapon.

A careful reading of the charge reveals no such inadequacies or other justification for complaint. The jury were instructed that defendant "carries with him the presumption of innocence" and that the burden was upon the Commonwealth to prove his guilt beyond a reasonable doubt. There was no need to charge upon the

nature of circumstantial evidence because the Commonwealth did not rely upon such evidence but upon a confession. The charge in reference to the various confessions which were introduced in evidence was more than sufficient; the jury were told that the burden was on the Commonwealth to prove the conditions under which they were made, and that it must be shown they were made voluntarily; the evidence was reviewed as to the manner in which they were obtained, and the question was submitted for the determination of the jury as to whether they were voluntary and what amount of consideration should be given to them; once it is established that a confession was freely made it is not, as defendant's counsel suggests, the weakest, but, on the contrary, the strongest evidence of guilt. The charge concerning the elements of murder in the second degree was also adequate; it was phrased substantially in the language used in *Commonwealth v. Drum*, 58 Pa. 9, 17, which has long been accepted as the model in Pennsylvania courts for charges in homicide cases; although the murder for which defendant was convicted was perpetrated in the course of an attempt to commit robbery, and therefore, under the statute, was murder of the first degree, the court did not deprive the jury of its right to find a lesser verdict; on the contrary, they were told it was their duty to fix the degree of the crime. In regard to defendant's attempt to prove an alibi, the trial judge not only charged that such a defense could be established by the mere preponderance of the evidence, but he added that an alibi "is the most perfect defense in the world"; he did not need specifically to state, although it is true, that the evidence offered in support of an alibi may be sufficient of itself to raise a reasonable doubt. Concerning the presumption of intent arising from the use of a deadly weapon, the trial judge again resorted to the language in the *Drum* case; the jury could not have failed to understand that the presumption was a rebuttable one and that the burden was at all times upon the Commonwealth to prove the actual

intent; in view of the fact that the murder here was committed as part of an attempt to rob, the intent with which the fatal shot was fired is at best an academic matter.

The real grievance of defendant is with the verdict of the jury; he contends that the evidence was not sufficient, as a matter of law, to warrant a finding of guilt.

The Commonwealth admits that the case has its peculiarities. On the night of May 27, 1938, some person or persons attempted to commit a robbery at a drug store at the corner of 17th Street and Montgomery Avenue, Philadelphia. In the course of this attempt the proprietor of the store, William Heim, was shot and instantly killed. Mrs. Heim, his wife, rushing into the store from the living quarters in the rear, saw a colored man crouching down along the counter on his way out, but she did not see his face and could not identify him. After he reached the street another shot was fired back into the store either by him or a confederate. A person passing at the time in an automobile heard two shots and saw three men running, two from the store and one from the curb; he purported to identify one of these as a negro named James Henry Lewis, but in this identification he was mistaken, as will appear hereafter. A few days before the occurrence of the crime Mrs. Heim had seen a colored man looking into her dining room window from Montgomery Avenue; two years later she identified defendant as that man. Outside of the testimony as thus stated there was no evidence, except for certain confessions, to connect anyone with the crime.

The history of the confessions is as follows: In November, 1939, a year and a half after the murder, James Henry Lewis was arrested in connection with a series of burglaries in which he and defendant had participated. On December 27, 1939, he signed a statement in which he confessed to these burglaries, and he incidentally mentioned therein that defendant told him he had been in the 17th and Montgomery Avenue affair but had re-

mained on the outside as a look-out; Lewis stated he did not know the person who went inside and did the shooting. On February 1, 1940, Lewis signed another statement in which he said that defendant had asked him to participate in the proposed robbery at the drug store but he refused; after the affair defendant told him he had remained on the outside and the "other fellow" had gone inside; Lewis did not know who the "other fellow" was, but intimated that a negro named Murray was defendant's likely confederate. As a result of this, Charles Murray was arrested, and on February 9, Lewis and Murray made a joint statement, this being Lewis's third. This time Lewis stated that he himself had been a participant in the attempt to rob the drug store; he said, and Murray agreed, that defendant suggested the plan, that defendant went in the store, Murray and Lewis remaining outside and running away when they heard the shot, which presumably, according to this story, was fired by defendant. That same day, February 9, Murray signed a statement of his own in which he said that it was Lewis who planned the robbery, that all three—Lewis, defendant and himself—participated in it, and that defendant was the one who entered the store and did the shooting. On February 12 Lewis and Murray signed additional individual statements, Lewis claiming that the robbery was planned by defendant and Murray, Murray that it was planned by defendant and Lewis, but both now agreeing that it was Murray who went into the store and defendant was entering behind him when the shot was fired by Murray; in Murray's statement he said the druggist struck him on the wrist with a club and the gun went off; he further stated that the shot from the street was fired by defendant. After these latest confessions, Lewis and Murray were taken to the drug store and made to reenact the crime, which they did apparently with great precision. In April the police arrested defendant in North Carolina, where he had gone in December, 1939, after an affray in which he shot and wounded his wife.

On being brought back to Philadelphia he signed a statement on April 12 in which he told of the various burglaries he had committed with Lewis, but made no mention of the Heim affair. On April 22 he signed another statement to the effect that the three of them—Lewis, Murray and himself—had planned the drug store robbery, that Lewis had the gun and gave it to Murray, Murray entered the store and did the shooting and defendant was about to enter when the shot was fired. It may be added that all the confessions contain minor contradictions in regard to the circumstances attending the commission of the crime and the previous and subsequent meetings of the accomplices, although each of them, because of a wealth of detail, has the appearance of truth.

The first of the men to be tried was Lewis. There was then revealed the surprising fact that on the night of the murder, May 27, 1938, Lewis was actually confined in the Philadelphia County Prison, and therefore could not have participated in the attempted robbery or joined in planning the crime during the days preceding its commission. This was proved so conclusively by official records and other testimony that the Commonwealth admitted the fact, and accordingly Lewis was discharged in habeas corpus proceedings. Some months later defendant was tried and found guilty of murder of the first degree, with penalty of death fixed by the jury. Then Murray was tried by a jury and convicted of first degree murder, with life imprisonment as the penalty.

The four confessions of Lewis were false, as was also his re-enactment of the event. The trial judge told the jury that "the alleged confession of Lewis is not a confession at all," and that because of this fact they would have to determine what reliance could be placed on the confessions made by defendant and Murray since these also falsely implicated Lewis. All three repudiated their confessions; they claimed they had been struck and beaten by the detectives and forced to make and sign the

statements. The detectives vigorously denied these allegations, and there was no evidence of marks or bruises at any time on the bodies of the men. The court left to the jury, under proper instructions, the duty of determining whether the statements were voluntarily made, and the jury evidently concluded that they were.

In view of the host of cases which have considered the subject* it should not be necessary again to emphasize the limited extent of the power and duty of this court in the review of homicide cases as prescribed by the Act of February 15, 1870, P. L. 15, section 2, namely, "to review both the law and the evidence, and to determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist; and if not so proved, then to reverse the judgment and send the same back for a new trial, or to enter such judgment as the laws of this commonwealth require." It was said by the present Chief Justice in *Commonwealth v. Caliendo*, 279 Pa. 293, 297, 123 A. 797, 798: "The elements of first degree murder appear in the record; when they do, and there are no trial errors, our function in dealing with the case is at an end." In *Commonwealth v. Carelli*, 281 Pa. 602, 604, 605, 127 A. 305, 306, it was said: "By his confession, which was offered in evidence, it appeared that the murder had been committed in the course of an

---

* *Grant v. The Commonwealth*, 71 Pa. 495, 505; *Staup v. The Commonwealth*, 74 Pa. 458, 462; *McCue v. Commonwealth*, 78 Pa. 185, 189; *Commonwealth v. Morrison*, 193 Pa. 613, 621, 622, 44 A. 913; *Commonwealth v. Danz*, 211 Pa. 507, 512, 60 A. 1070, 1071; *Commonwealth v. Garrito*, 222 Pa. 304, 306, 71 A. 20, 21; *Commonwealth v. DeMasi*, 234 Pa. 570, 571, 83 A. 430, 431; *Commonwealth v. Harris*, 237 Pa. 597, 599, 85 A. 875, 876; *Commonwealth v. Diaco*, 268 Pa. 305, 306, 111 A. 879, 880; *Commonwealth v. Priest*, 272 Pa. 549, 550, 116 A. 403; *Commonwealth v. Caliendo*, 279 Pa. 293, 297, 123 A. 797, 798; *Commonwealth v. Carelli*, 281 Pa. 602, 604, 605, 127 A. 305, 306; *Commonwealth v. Scott*, 284 Pa. 159, 163, 130 A. 317, 319; *Commonwealth v. Bishop*, 285 Pa. 49, 59, 60, 131 A. 657, 661; *Commonwealth v. Nolly*, 290 Pa. 271, 274, 138 A. 836, 837; *Commonwealth v. Watkins*, 298 Pa. 165, 167, 168, 148 A. 65, 66; *Commonwealth v. Tauza*, 300 Pa. 375, 379, 150 A. 649, 650; *Commonwealth v. Karmendi*, 328 Pa. 321, 323, 324, 195 A. 62, 63.

attempted robbery; this is murder of the first degree
(section 74 of the Act of March 31, 1860, P. L. 382, 402),
and hence we need go no further in the performance of
the duty imposed on us by section 2 of the Act of February 15, 1870, P. L. 15, for, in giving effect to that statute,
we must accept as true all the evidence upon which, if
believed, the jury could properly have based its verdict."
In *Commonwealth v. Watkins*, 298 Pa. 165, 168, 148 A.
65, 66, we said: "The legislature never intended to impose upon this court the duty of weighing the evidence
and passing upon the credibility of witnesses in first degree murder cases and we have never so construed it."
And in *Commonwealth v. Karmendi*, 328 Pa. 321, 324,
195 A. 62, 63, we said: "Their [the jury's] conclusion
cannot be reversed or set aside by this court unless there
has been a trial mistake, or the evidence is insufficient
to sustain the verdict as a matter of law." In the present
case, of course, the elements of first degree murder are
present because the shooting occurred in the attempt to
perpetrate a robbery. Because of the falsity of Lewis's
confessions as admitted by the Commonwealth, and because of the inconsistencies and at least partial falsity
of all the other confessions, the jury might have acquitted
defendant; on the other hand, there was enough in defendant's confession by way of admission of his participation in the crime to warrant conviction, and the
jury presumably found, as they had a right to do under
the evidence, that his confession was voluntarily made.
Certainly, the Commonwealth's case was not demurrable; the issue of defendant's guilt or innocence had to
be submitted to the jury, and by its verdict this court is
concluded.

The judgment is affirmed, and it is ordered that the
record be remitted for the purpose of execution.

PER CURIAM, June 29, 1942:
A belated petition for re-argument was filed, by permission of the Court, nunc pro tunc. It avers that the
trial judge committed error in charging the jury in

regard to the consideration to be given by them to the confessions of Lewis and, especially, of Murray. As this complaint was not covered by the assignments of error filed, and was not raised or argued in the court below or in this court, appellant was granted leave to file additional assignments.

The point raised by appellant is that the trial judge improperly allowed the jury to treat these confessions as substantive evidence against appellant. Ordinarily, statements previously made by a witness can be used only to discredit the testimony inconsistent therewith given by him on the witness-stand, but, under the peculiar circumstances of the present case, it was necessary for the jury to determine for a wholly different purpose the truth or falsity of the facts asserted in the confessions. The latter were placed in evidence, not by the Commonwealth to impair the credibility of Lewis and Murray, but by appellant himself in order to prove that his own confession was false and had been obtained from him by violence; this he sought to establish by attempting to show that the other confessions, made in regard to the same murder and asserting the same facts as the one made by him, were false and obtained by the same method. Certainly, he could not place these confessions in evidence with the claim that they were false without it being permitted to the Commonwealth to claim, on the contrary, that they were true because voluntarily made and substantially corresponding to his own. Appellant thus himself raised the issue of the truth or falsity of the confessions as a whole, taking the position that they stood or fell together, and if the jury resolved this issue, as they evidently did, in favor of the Commonwealth and found at least the Murray confession to be true, such a finding necessarily resulted in, and was indeed equivalent to, the verdict of guilty which they rendered.

The petition for re-argument is dismissed.