Commonwealth *v.* Phillips, Appellant.

Argued November 10, 1952.   Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*John W. Pollins,* with him *Avra N. Pershing, Jr.,* for appellant.

*Joseph M. Loughran,* Assistant District Attorney, with him *L. Alexander Sculco,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, January 5, 1953:

Defendant pleaded guilty to the crime of murder and the trial Court, consisting of three Judges, unani-

mously found him guilty of murder in the first degree and fixed death as the penalty. The only question involved in this appeal is whether the lower court abused its discretion by imposing the death penalty instead of life imprisonment.

These are the facts. At about 1:40 P.M. on April 4, 1952, the defendant, Phillips, and two accomplices were lying in wait for the purpose of robbing a man named Crain who was carrying the payroll money of the McFeeley Brick Company. The plans for this robbery were carefully made several months prior to the attempted robbery. The night before the robbery defendant and his accomplices "stole a car to pull a holdup". Defendant was to be the holdup man; Geter was the look-out man and driver of the stolen "getaway" car; Maloy was the driver of the "pick-up" car which was to pick up the robbers after the stolen car had been abandoned. According to the plan defendant and Geter were to precede Crain to the brick company's office and park their automobile next to the space were Crain's automobile would be parked. Defendant and Geter did not see Crain in time to carry out their preconceived plan. When defendant saw Crain turning his automobile into the driveway of the brick company, defendant decided to follow and rob him. Crain stopped his car in front of the office and got out with the box containing the payroll. Just at this moment defendant and Geter drove up in their stolen car and stopped twenty feet behind Crain's car. Defendant, wearing a burlap hood, fully armed with gun to kill and pepper to throw into an officer's face to aid (if necessary) his escape, got out and ran toward the porch of the office calling to Crain to stop. When Crain did not stop defendant fired one shot which hit just to the right of the office door. Crain ran into the office carrying the payroll with him, and

slammed the door behind him. Defendant when only a few inches from the glass (part of the) door and only 3 to 5 feet away from Crain fired a second shot through the glass door hitting Crain in the back. Crain died 45 minutes later as a result of hemorrhage and shock caused by this gunshot wound.

Defendant testified that he fired the first shot while Crain was outside the office building in order to frighten him and compel him to stop and surrender the payroll money; when Crain did not stop but turned left into a corridor inside the building, defendant fired the second shot through the glass so that he could safely escape.

He then ran back to Geter's automobile and drove to a point about three miles from the scene of the crime where he and Geter met Maloy who was waiting for them by pre-arrangement. The stolen car was abandoned; the defendant and his accomplices, Geter and Maloy, drove back to the brick company, according to previous plans, in order to establish an alibi. Shortly thereafter defendant was driven to his home where, again according to pre-arranged plans, he was to be seen in order to further support an alibi. Shortly thereafter defendant learned from a news broadcast that Crain had been killed.

Defendant and his accomplices were apprehended by the police on April 11. After being arrested defendant signed a written confession admitting his part in the attempted robbery and the shooting of Crain and thereafter defendant cooperated with the authorities in the solution of the crime and the conviction of his accomplices.

Defendant was a man of unusual intelligence; the robbery was long and very carefully planned; the killing was not the result of a sudden impulse but, it is

apparent from the facts, a wilful, deliberate, premeditated and cold-blooded murder. Defendant contends that the mitigating circumstances impelled the imposition of a penalty no higher than life imprisonment.

Defendant gives his version of the killing in a light most favorable to him and then the mitigating circumstances. Defendant first contends that the killing was unintentional and that he shot first to scare the decedent and the second time merely to discourage pursuit. The facts themselves clearly show how implausible this part of his testimony is. There is no requirement that either the jury or a Court must believe the accused. The sole requirement is that there be sufficient evidence to justify the jury's verdict: *Commonwealth v. Logan,* 361 Pa. 186, 191, 63 A. 2d 28. It has become customary for a defendant in his argument before an Appellate Court to base his claims and contentions upon his own testimony or that of his witnesses even after a jury has found him guilty. This, of course, is basic error. After a plea or verdict of guilty, "we accept as true all of the Commonwealth's evidence upon which, if believed, the jury could have properly based its verdict: Com. v. Blanchard, 345 Pa. 289, 296, 26 A. 2d 303, 306 (1942). See also Com. v. Karmendi, 328 Pa. 321, 324, 195 A. 62, 63 (1937); Com. v. Watkins, 298 Pa. 165, 168, 148 A. 65, 66 (1929); Com. v. Carelli, 281 Pa. 602, 605, 127 A. 305, 306 (1925); Com. v. Priest, 272 Pa. 549, 550, 116 A. 403 (1922); Com. v. Diaco, 268 Pa. 305, 306, 111 A. 879, 880 (1920)." *Comonwealth v. Logan,* 361 Pa. 186, 192, supra. That disposes of defendant's contention that the killing was unintentional, although a killing when committed in the course of a robbery does not have to be intentional—indeed the defendant need not have fired the fatal shot. *Commonwealth v. Moyer and Byron,* 357 Pa. 181, 53 A. 2d 736; *Commonwealth v. Hough,* 358 Pa. 247,

56 A. 2d 84; *Commonwealth v. Almeida*, 362 Pa. 596, 68 A. 2d 595; Blackstone, Book 4, page 192-193.

The other alleged mitigating circumstances upon which defendant relies arose after the murder had been committed and consisted of a voluntary confession, reenactment of the crime, supplying evidence against accomplices and entering a plea of guilty to homicide. All of these so-called mitigating facts were called to the attention of the lower Court before it imposed sentence of death. It is in most cases a dreadful ordeal for a Judge or Court to have to impose a death penalty and the lower Court in this case conscientiously but unsuccessfully searched for mitigating circumstances which would enable it to impose a penalty of life imprisonment.

When the Court below has determined in the exercise of its statutory discretion that the extreme penalty shall be imposed, the question on appeal is not whether this Court would have imposed a different penalty, the question, or more accurately the questions are: (1) Accepting as true all of the Commonwealth's evidence, were the ingredients necessary to constitute a murder in the first degree present; (2) was the penalty imposed in keeping with the alternatives authorized by the statute; (3) was the discretion reposed in the Court below judicially exercised; (4) was there a manifest abuse of discretion; or (5) an error of law? *Commonwealth v. Elliott*, 371 Pa. 70, 89 A. 2d 782; *Commonwealth v. Hawk*, 328 Pa. 417, 196 A. 5; *Commonwealth v. Howell*, 338 Pa. 577, 13 A. 2d 521; *Commonwealth v. Taranow*, 359 Pa. 342, 59 A. 2d 53; *Commonwealth v. Hough*, 358 Pa., supra.

The defendant's criminal career started when he was 15 years of age; at the age of 18 he shot and robbed a man and then chloroformed him. The Court below was justified in taking these facts into consideration

in imposing his sentence. *Commonwealth v. Holley,* 358 Pa. 296, 56 A. 2d 546; *Commonwealth v. Johnson,* 368, Pa. 139, 81 A. 2d 569.

We find no abuse of discretion, or error of law, or any error that would justify a reduction of the penalty from death to life imprisonment.

Judgment and sentence affirmed.