Commonwealth *v.* Burns, Appellant.

Argued April 30, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Abraham J. Brem Levy*, for appellant.

*Richard A. Sprague*, Assistant District Attorney, with him *Burton Satzberg* and *Arlen Specter*, Assistant District Attorneys, *Paul M. Chalfin*, First Assistant District Attorney, and *James C. Crumlish, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 21, 1963:

The appellant, Thomas E. Burns, was convicted of murder in the first degree and sentenced to life imprisonment. The appellant and Marie Coleman had been living in a meretricious relationship for several years prior to January 10, 1959, when she was last seen alive. Burns and Marie Coleman were the sole occupants of a house in Philadelphia, using the second floor and third floor as their living quarters. Both were employed and Burns was married, but separated from his wife and children. Marie Coleman had many relatives in the Philadelphia area, including sisters, nieces, a brother and a married daughter, living in Detroit, Michigan, and she had friends with whom she associated in the area where she lived.

At the trial, in April 1961, no evidence of the dead body or any part of the body of Marie Coleman was produced. The Commonwealth's evidence consisted entirely of circumstantial evidence, statements and admissions of defendant.

The reasons assigned by appellant for new trial or arrest of judgment are essentially that the evidence produced by the Commonwealth was not sufficient to prove the corpus delicti and the extrajudicial statements of defendant, admitting complicity in the crime charged, were admitted before the corpus delicti was established; and the evidence adduced by the Commonwealth, both direct and circumstantial, was not such as reasonably and naturally would justify an inference

of guilt, nor of such quantity and quality as to over-come the presumption of innocence and support a ver-dict of murder in the first degree; and the remarks of the assistant district attorney and the judge in refer-ring to Marie Coleman as the dead woman; and the admission in evidence of an incident several months prior to the disappearance of Marie Coleman; and the court in calling and questioning a witness; all of which complaints deprived the defendant of due proc-ess and fair trial under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

The appellant was arrested on October 21, 1960 and charged with the murder of Marie Coleman, who dis-appeared on January 10, 1959.

At the trial, before Judge WEINROTT and a jury, in April 1961, the Commonwealth introduced evidence to establish that Marie Coleman was about 49 years of age, about 5 feet 9 inches tall and weighed approxi-mately 185 pounds. On Friday, January 9, 1959, be-tween ten and ten-thirty P.M., Marie Coleman called her sister's home on North 21st Street, Philadelphia, and spoke to her niece (Ernestine Moore). Elodis Palmer, the sister of Marie Coleman, then was called to the telephone and spoke to her sister. Elodis Pal-mer last saw her sister in December 1958, but had numerous telephone conversations with her until the last one on January 9, 1959.

Earthia Del Wooden, a friend of Marie Coleman for many years, and who saw her daily, was with her on Saturday night and returned to Marie Coleman's home with her shortly after midnight after drinking in sev-eral bars. Marie Coleman went in the house, using a key and Earthia Del Wooden was walking to her home when at the side of the house heard a commotion and returned, rang the doorbell, was admitted by the de-fendant and both went to the second floor apartment

where Marie Coleman was lying on the floor, motionless, with some blood on her forehead. Earthia Del Wooden left, the defendant stayed in the house. It was the last time Earthia Del Wooden saw Marie Coleman.

Another friend, Netra Chappell, saw Marie Coleman on Saturday, January 10, and was to meet her the next day, Sunday, January 11, to do some shopping. Netra Chappell did not see Marie Coleman after Saturday, and did not meet her on Sunday. Marie Coleman did not keep her appointment.

Sisters and nieces of Marie Coleman in the Philadelphia area regularly received gifts, holiday and birthday greeting cards, as well as phone calls from her and had conversations with her by telephone several times weekly and some personal visitations at greater intervals. Marie Coleman visited her daughter and family in Detroit, Michigan in the summertime for about two weeks for six years before her disappearance. The daughter customarily received letters, phone calls, gifts and greeting cards from her mother.

Marie Coleman borrowed money from a bank in April 1958, which required repayment in monthly installments which were made each month within the time prescribed by the loan conditions. The last payment was received by the bank on December 17, 1958 and there were no other payments made, although there was much more money due on the loan to be paid in future monthly installments. Her credit rating was excellent.

The police made an extensive search in an attempt to find her or learn something of her whereabouts.

An examination of the premises occupied by the defendant and Marie Coleman revealed all her apparel, jewelry, underclothing, medication, tooth brush, comb and luggage and several coats and all the articles she owned were intact in the premises.

The Commonwealth's purpose in submission of its evidence was to establish the corpus delicti by showing the habits and way of life of Marie Coleman and the consistency of her practice of maintaining a close relationship with her family and friends, who were numerous, and with her daughter and grandchildren in Detroit. She had a good credit rating and a recognition of financial obligations to be met regularly and on time. Her employment enabled her to meet her obligations and enabled her to buy gifts and send greeting cards on holidays, birthdays and other times throughout the year to her relatives. She was able to spend time with her daughter and grandchildren in Detroit on her annual summer trip to be with them, when she brought gifts for her family. Any time Marie Coleman would make a trip she would advise members of her family she was leaving. Her customs were well known.

The Commonwealth advances its position of establishment of the corpus delicti by showing a well, healthy woman, with a consistent pattern of living for many years and a sudden and abrupt termination of such pattern without any prior preparation or discussion with any of her relatives or friends; her disappearance without natural or legitimate reason or cause established the corpus delicti by showing circumstantially (1) death, (2) felonious circumstances surrounding her disappearance abruptly and without apparent cause. The last time she was seen was in the presence of the defendant in an apparently helpless condition on the floor of their common abode in circumstances that would indicate she was unconscious or incapable of moving herself.

In *Commonwealth v. Lettrich*, 346 Pa. 497, 31 A. 2d 155 (1943), pages 502, 503, this court said: "It is elementary that the term corpus delicti with respect to homicide does not require the Commonwealth to produce the body or part of the body of the victim. The

rule is satisfied by evidence, other than the confession, from which the jury on proper instructions may find that the child's death resulted from a felonious act. The fact may be found on circumstantial evidence."

The Commonwealth then produced other evidence in addition to that submitted for the purpose of establishing the corpus delicti, the additional evidence to show the defendant as the party responsible for the homicide.

In *Commonwealth v. Kravitz*, 400 Pa. 198, 208, 209, 161 A. 2d 861, this Court said: "In Commonwealth v. Sauders, 390 Pa. 379, 134 A. 2d 890 . . . This Court sustained the jury's verdict, which found defendant guilty of murder in the first degree and said (pages 387-388) : 'In Commonwealth v. Bolish, 381 Pa. 500, 113 A. 2d 464, the Court said (page 508) : ". . . Proof by eye witnesses or direct evidence of the corpus delicti or of identity or of the commission by the defendant of the crime charged is not necessary. '. . . It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820; Commonwealth v. Homeyer, 373 Pa. 150, 94 A. 2d 743; Commonwealth v. Lowry, 374 Pa. 594, 600, 98 A. 2d 733; Commonwealth v. Danz, 211 Pa. 507, 60 A. 1070; Commonwealth v. Wentzel, 360 Pa. 137, 61 A. 2d 309': Commonwealth ex rel. Garrison v. Burke, 378 Pa. 344, 348, 106 A. 2d 587." ' See also to the same effect: Commonwealth v. Boden, 399 Pa. [298, 159 A. 2d 894] ; Commonwealth v. Nasuti, 385 Pa. 436, 123 A. 2d 435; Commonwealth v. Carey, 368 Pa. 157, 82 A. 2d 240."

In *Commonwealth v. Homeyer*, 373 Pa. 150, the Court pertinently said (pages 156-157) : "The Commonwealth has the burden of proving beyond a reasonable

doubt a wilful, deliberate and premeditated killing in order to constitute murder in the first degree. The Commonwealth in such a case, in order to establish the corpus delicti, must prove (1) that the alleged victim is dead, and (2) that the death occurred as a result of a felonious act. The corpus delicti, like other facts, may be shown by circumstantial evidence. . . ."

We have consistently held this to be the law of the Commonwealth of Pennsylvania. In *Commonwealth v. Deyell*, 399 Pa. 563, page 567, 160 A. 2d 448 (1960) the Court said: "To sustain a charge of murder the Commonwealth must produce sufficient competent evidence to establish beyond a reasonable doubt three distinct elements: (1) that an identified person is dead; (2) that the death of the person was criminally caused by the felonious act of another; (3) that the accused is the responsible party or one of the parties responsible: Commonwealth v. Turza, 340 Pa. 128, 16 A. 2d 401 (1940); Commonwealth v. Gardner, 282 Pa. 458, 128 A. 87 (1925). The corpus delicti consists of proof of the first two: namely, that the person because of whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances directly indicating that it was criminally caused by someone: Commonwealth v. Lettrich, 346 Pa. 497, 31 A. 2d 155 (1943). The corpus delicti must first be established before extra-judicial confessions or admissions connecting the accused with the crime are admissible into the evidence. However, the corpus delicti, like other facts, may be shown by circumstantial evidence: Commonwealth ex rel. Lagana v. Day, 385 Pa. 338, 123 A. 2d 172 (1956); Commonwealth v. Fletcher, 387 Pa. 602, 128 A. 2d 897 (1956)."

In *Commonwealth v. Ross*, 403 Pa. 358, 169 A. 2d 780 (1961) the Court said (page 367): "Ross next contends that the Commonwealth failed to establish the corpus delicti and, therefore, the confession should

not have been received in evidence. The rule which governs this situation is set forth in Commonwealth v. Turza, 340 Pa. 128, 133, 134, 16 A. 2d 401: '. . . an extrajudicial admission or confession of one accused of crime cannot be received in evidence unless and until the corpus delicti of the crime has first been established by independent proof, and that failure to comply with this prerequisite will exclude the admission or confession . . .' However, this rule does not require 'that the Commonwealth must preliminarily and independently establish *all* the elements of the charge, i.e., (1) the occurrence of an injury or loss—in homicide, a person deceased, (2) somebody's criminality as the source of the injury or loss—in homicide that the death was caused by a beating, gunshot or other circumstances indicating a felonious act, and (3) the accused's identity as the responsible party or one of the responsible parties:' Commonwealth v. Turza, supra, p. 134. (Emphasis supplied.) In Commonwealth v. Homeyer, 373 Pa. 150, 156, 157, 94 A. 2d 743, we said: 'The Commonwealth, . . . in order to establish the corpus delicti, must prove (1) that the alleged victim is dead, and (2) that the death occurred, as a result of a felonious act. The corpus delicti, like other facts, may be shown by circumstantial evidence; it is sufficient if these circumstances are consistent with crime even though they are also consistent with suicide or accident; . . .' See also: Commonwealth v. Kravitz, 400 Pa. 198, 209-211, 161 A. 2d 861. Before the Commonwealth may introduce a confession into evidence it must first establish, either by direct or circumstantial evidence, that the person for whose death the prosecution is instituted is actually dead and that such death took place 'under circumstances which indicate criminal means'."

On January 23, 1959, the defendant went to the home of Marie Coleman's sister inquiring about Marie, informing her family that she had been missing since

Saturday, January 10. The members of Marie Coleman's family had been trying to call her by telephone between January 10 and the 23rd and the defendant did not report her disappearance to the police and was inquiring from her family at the insistence of the defendant's mother. The family reported her missing to the police and called relatives in other states attempting to secure some information about her. By the 27th of January her dog had been disposed of by the defendant. Efforts were being made by the police and family to secure some clues as to the whereabouts of Marie Coleman but no trace of her could be found.

About one month after she was reported missing by her family and after the appellant had told them she was not at their house, the police went to see the defendant at his home and found it closed and boarded up and were unable to gain entrance and it was in May 1959 when the police talked to the defendant, who at the time was staying at the home of his sister.

Several people told of statements the defendant made about the disappearance of Marie Coleman. At the time Earthia Del Wooden heard the noise in the house and returned, the defendant opened the door for her and told her that Marie Coleman had come at him with a knife and tried to cut him and he had to knock her out and when Earthia Del Wooden saw her friend, Marie Coleman, on the floor of the living room and was about to help her the defendant told her "She was out" (meaning intoxicated) and to let her sleep it off. Earthia Del Wooden then left for her home. About a week later when this witness asked the defendant what had happened to Marie Coleman, the defendant said he cut her up and put her in the trash.

The friend Netra Chappell, who had an appointment with Marie Coleman on Sunday, January 11 had made several trips to the house occupied by Marie Coleman and the defendant and had a conversation with the

defendant about a month later when the defendant told Netra Chappell that he, the defendant, and Marie Coleman had an argument when she came home, that he threw a hammer at her which knocked her to the floor and he became frightened and cut her up and put her in the trash. In other conversations with her the defendant repeated this to her.

On another occasion, about the end of January, 1959, the defendant had a conversation with Walter J. Bostic, a friend. The defendant told Bostic he had an argument with Marie Coleman and she bumped her head and fell and he got nervous and scared and cut her up and buried her in the cellar.

The defendant was brought to the Philadelphia Police Department, Homicide Division, on October 21, 1960 and there said "You fellows is going to look like a bunch of monkeys when you get in court, when you haven't got the body you don't have the corpus delicti." The detectives had not told him the body of Marie Coleman had not been found. The defendant was charged with the murder of Marie Coleman on this date.

The defendant's son, Thomas Burns, eighteen years of age, testified at the trial that he was at the home of his father where his father and Marie Coleman lived, watching television. He testified that on the night of January 10, Marie Coleman came home and he heard her say "Goodbye" to somebody at the front door. Marie Coleman came in and began an argument with the defendant. She had a knife and defendant went to the kitchen and got a hammer or an axe and Marie Coleman swung the knife at defendant but he avoided it and he, the defendant, hit her on the head with the instrument in his hand. The defendant ordered his son to get his clothes and go home to Camden, New Jersey, where he was living with his mother, the estranged wife of the defendant. The son went to the third floor and got his clothes and left the house.

The son testified that subsequently either Father's Day or Mother's Day and after the son told his mother what had happened to Marie Coleman, his mother asked the defendant whether he had killed Marie Coleman and the defendant replied that he had cut her up and taken her bones and given them to the dogs and the defendant said he had put her in a big barrel and put all the trash on top of her.

The son was called as a witness by the court, who questioned him and then turned him over to the Commonwealth for cross-examination. The defendant did not cross-examine this witness.

This case is unique in Pennsylvania in that no body or part of the body or evidence of remains of this adult, Marie Coleman, has ever been found. In *Commonwealth v. Lettrich,* supra, an eight day old baby disappeared and no body or part of the body was found; and in *Commonwealth v. Jones,* 297 Pa. 326, 146 A. 905 (1929), no body or part of the body of the alleged victim was ever found, but human bones and jewelry identified as similar to that of the alleged victim were found in the ashes of a burned building.

It is not necessary to produce the body or part of the body of the victim if certain requirements are met. Of course it is necessary properly to prove the corpus delicti, which may be done circumstantially. We repeat what the Court pertinently said in *Commonwealth v. Lettrich,* supra, *"It is elementary that the term corpus delicti with respect to homicide does not require the Commonwealth to produce the body or part of the body of the victim.* The rule is satisfied by evidence, other than the confession, from which the jury on proper instructions may find that the child's death resulted from a felonious act. The fact may be found on circumstantial evidence. In this case the admitted facts, defendant's false declarations and her acts in conformity with those declarations, furnish a substan-

tial basis for submitting the evidence to the jury. This conclusion is supported, too, by comparison with other cases of infanticide in which confessions were received. See Rex v. McNicholl, (1917) Ir. R. 557; Attorney General v. Edwards, (1935) Ir. R. 500; Regina v. Woodgate, (1877) 3 New Zealand Ct. of App. 320; Makin v. Atty Gen'l for New South Wales, L.R. (1894) A. C. 57; People v. Kirby, 223 Mich. 440 194 N.W. 142."

As the Court said in *Gray v. The Commonwealth*, 101 Pa. 380 (1882), at page 386, "It is a fact [corpus delicti] to be proved like any other fact in the cause, and be found by the jury upon competent evidence. The true rule in such cases is believed to be this: when the commonwealth has given sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime. Under such circumstances the jury should first pass upon the sufficiency of the evidence of the *corpus delicti*. If it satisfies them beyond a reasonable doubt that the crime has been committed, then they are at liberty to give the confession such weight as it is entitled to, taking into view the circumstances surrounding it, and the extent to which it has been corroborated. There is no rule of the criminal law which requires absolute certainty about this or any other question of fact. If it were otherwise, it would be impossible to convict of any offence in any case. All the law requires is that the *corpus delicti* shall be proved as any other fact, that is, beyond a reasonable doubt, and that doubt is for the jury."

The appellant's principal complaint in the instant case is that the corpus delicti was not properly proven and it was improper to admit statements, declarations and admissions attributable to him for the jury's consideration. There was no confession introduced into evidence as the defendant did not make a confession

as such. However, there were some declarations made by him which, if true, incriminated him and placed the responsibility for the disappearance of Marie Coleman solely on him.

Our court has consistently held that certain requirements must be met. The Commonwealth in establishing its proof of the corpus delicti and the defendant as the felon, must prove every element necessary to make out the crime beyond a reasonable doubt. Whether the Commonwealth has met this burden is first a matter of law for the trial judge, and if there is sufficient evidence produced, it must be submitted to the jury for its consideration with proper instruction, so that the jury may be adequately and knowingly informed of its duties and the requirements of the law. The jury properly instructed, must decide whether the Commonwealth has met its burden.

Recently the Court said in *Commonwealth v. DeMoss,* 401 Pa. 395, 165 A. 2d 14 (1960) at page 398: "In determining the sufficiency of the evidence to sustain DeMoss' conviction it is our duty to examine and scrutinize in detail *all* the evidence in this record and to attempt to place in juxtaposition each act, scene and character in this macabre drama. In so doing, we review the evidence and the inferences reasonably arising from such evidence in the light most favorable to the Commonwealth: Commonwealth v. Scoleri, 399 Pa. 110, 115, 160 A. 2d 215; Commonwealth v. Moore, 398 Pa. 198, 202, 157 A. 2d 65."

It is our duty in reviewing this first degree murder case to review both the law and the evidence and to determine whether the ingredients necessary to constitute murder in the first degree have been proved to exist, Act of February 15, 1870, P. L. 15, 19 P.S. §1187. In *Commonwealth v. Gates,* 392 Pa. 557, 141 A. 2d 219 (1958), at page 559: " ' "Under the Act of February 15, 1870, P. L. 15 [19 PS §1187], it is our duty to review

both the law and the evidence and determine whether the ingredients necessary to constitute first degree murder have been proved. *If there is competent evidence to support the verdict we cannot usurp the function of the jury* and reverse merely because it might be contended they should not have believed the witnesses produced on behalf of the commonwealth" ': Commonwealth v. Watkins, 298 Pa. 165, 167, 168, 148 A. 65. (Italics supplied). '. . . The sufficiency of the evidence must be tested according to the Commonwealth's evidence': Commonwealth v. Wright, 383 Pa. 532, 536, 119 A. 2d 492." See *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125 (1950) ; *Commonwealth v. Davis,* 363 Pa. 91, 69 A. 2d 123 (1949) ; *Commonwealth v. Carey,* 368 Pa. 157, 82 A. 2d 240 (1951) ; *Commonwealth v. Blanchard,* 345 Pa. 289, 26 A. 2d 303 (1942).

The trial judge, from an examination of this record properly submitted to the jury in a correct charge, the matter of the corpus delicti and whether the accused was the responsible party for the crime. The jury was warranted under the evidence in finding that Marie Coleman is dead and that her death was by a felonious act of the defendant, Thomas Burns. The circumstantial evidence submitted by the Commonwealth, if believed by the jury, as it was, was sufficient in quality and quantity to prove beyond a reasonable doubt the defendant's guilt.

The requirement necessary to prove a crime by circumstantial evidence has been considered by this court recently in *Commonwealth v. Kravitz,* 400 Pa. 198, 201, 161 A. 2d 861 (1960) where Mr. Chief Justice BELL said: "The most important question in this appeal is whether the lower Court erred in dismissing defendant's motion in arrest of judgment.

"The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which,

if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, i.e., the murder of Max Kravitz: Commonwealth v. Sauders, 390 Pa. 379, 134 A. 2d 890; Commonwealth v. Boden, 399 Pa. 298, 159 A. 2d 894; Commonwealth v. Homeyer, 373 Pa. 150, 94 A. 2d 743; Commonwealth ex rel. Garrison v. Burke, 378 Pa. 344, 106 A. 2d 587; Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820; Commonwealth v. Bolish, 381 Pa. 500, 113 A. 2d 464; Commonwealth v. Lowry, 374 Pa. 594, 98 A. 2d 733; Commonwealth v. Blanchard, 345 Pa. 289, 26 A. 2d 303; Commonwealth v. Bishop, 285 Pa. 49, 131 A. 657; Commonwealth v. Danz, 211 Pa. 507, 60 A. 1070.

"In Commonwealth v. Phillips, 372 Pa. 223, 93 A. 2d 455, the Court said (page 227) : 'It has become customary for a defendant in his argument before an Appellate Court to base his claims and contentions upon his own testimony or that of his witnesses even after a jury has found him guilty. This, of course, is basic error. After a plea or verdict of guilty, "we accept as true all of the Commonwealth's evidence upon which, if believed, the jury could have properly based its verdict: Com. v. Blanchard, 345 Pa. 289, 296, 26 A. 2d 303, 306 (1942). See also Com. v. Karmendi, 328 Pa. 321, 324, 195 A. 62, 63 (1937) ; Com. v. Watkins, 298 Pa. 165, 168, 148 A. 65, 66 (1929) ; Com. v. Carelli, 281 Pa. 602, 605, 127 A. 305, 306 (1925) ; Com. v. Priest, 272 Pa. 549, 550, 116 A. 403 (1922) ; Com. v. Diaco, 268 Pa. 305, 306, 11 A. 879, 880 (1920)." . . .' "

In reviewing this record to determine the sufficiency of all of the elements and ingredients of murder in the first degree and to determine the sufficiency of the evidence to sustain the conviction, we review the evidence and inferences reasonably arising and deducible therefrom in the light most favorable to the Commonwealth. *Commonwealth v. DeMoss,* supra.

The burden is on the Commonwealth to prove the defendant guilty beyond a reasonable doubt. Reasonable doubt as defined by the Court in *Commonwealth v. Donough,* 377 Pa. 46, 51, 52, 103 A. 2d 694 (1954), is as follows: "A variety of definitions of 'reasonable doubt,' all expressing substantially the same thought, have been approved by the appellate Courts—See Commonwealth v. Kluska, 333 Pa. 65, 3 A. 2d 398. A standard and approved form of charge on this point would be: 'The defendant comes before you presumed to be innocent and the burden is upon the Commonwealth to prove his guilt beyond a reasonable doubt. A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt arising out of the evidence itself, the kind of a doubt that would restrain a reasonable man (or woman) from acting in a matter of importance to himself (or herself).' "

The appellant assigned as error the action of the court in calling Thomas Burns, the son of the defendant, as the court's witness and in the manner in which the court examined the witness and not charging the jury that the evidence should be considered only as impeaching testimony and not as substantive evidence.

This witness had given a statement to the police and there was indication that the witness might not testify in accordance with the statement given. The matter was called to the attention of the court by the Commonwealth and after a side-bar conference, or a conference in the judge's chambers, the court said that since the witness' name was on the bill of indictment and the Commonwealth not being willing to vouch for the testimony of this witness the court would call the witness, as the court's witness, and after some interrogation by the court, would permit him to be cross-examined by the Commonwealth and by the defendant. Defendant's counsel said he would call the witness if

the Commonwealth did not and that it would not be necessary for the court to do so. However, at the conclusion of the testimony, the witness had not been called. The court called the witness and interrogated him and the Commonwealth cross-examined him.

Thomas Burns, the son of the defendant, when interrogated by the court as to whether he saw his father do anything to Marie Coleman, said that he did not see anything. The district attorney cross-examined the witness and he admitted substantially all of the statements made to the police previously and when asked about the statements admitted making them, and the Commonwealth interrogated him about other matters which he readily admitted. The defendant did not cross-examine.

The testimony of this witness, some of it contradictory, was submitted to the jury and the instruction given by the court that the jury was to determine the facts. Some of the testimony of this witness could be regarded by the jury as substantive evidence and some of it would be for the consideration of the jury as impeaching testimony and evidence. The court did not specifically charge the jury that it was to consider the testimony on cross-examination or any prior contradictory statements the witness made as impeaching evidence and not as substantive evidence. An examination of this witness' testimony reveals that a small amount of it was impeaching evidence and could be considered as such by the jury, but the substantial portion of the testimony was such that it could be considered by the jury as substantive evidence to be considered by them for its value.

In certain instances it is not only proper for the court to call a witness as the court's witness but it is necessary and imperative to do so in the interest of justice. *Commonwealth v. Olitzky*, 184 Pa. Superior Ct. 144, 133 A. 2d 238 (1957). The court in its discretion

called this witness in the interest of justice. His name was endorsed on the indictment.

The appellant complains about the trial judge admitting extra-judicial statements made by defendant into evidence before the corpus delicti had been proved by competent, independent evidence. The conduct of the trial is the responsibility of the judge presiding. The order of proof is a matter within the realm of his judicial discretion. We will not interfere in the absence of abuse of discretion or error in the conduct of the trial. *Kline v. Kachmar,* 360 Pa. 396, 61 A. 2d 825 (1948) ; 38 P.L.E. Trial, §61.

When the assistant district attorney made an introductory talk to the jury panels, preparatory to the selection of the jury and before an examination of the jurors on their voir dire, he gave a brief outline of what the case was about to the panels and referred to Marie Coleman as "the dead woman". After he had spoken to several panels, defense counsel objected and thereafter the district attorney refrained from use of the term. The court once in the charge referred to Marie Coleman as "the dead woman".

These complaints and assignments of errors by appellant do not merit any discussion as there is no substance in his position as it is apparent from the record the jury understood the matter presented to them. The determination of whether there was a dead woman was one of the principal issues presented to them for their determination.

When reference was made to Marie Coleman as the "dead woman" it was not used in the context as descriptive of her condition. The term was used in referring to the person, as the record shows, as the jury was considering this very matter of whether in fact she was dead.

About six months prior to the disappearance of Marie Coleman a complaint was made to the police department about an occurrence at the home of defend-

ant and Marie Coleman. The Philadelphia Police Department record was subpoenaed by defendant but it was not offered in evidence. The Commonwealth then offered the complaint in evidence which was a slip of paper indicating the incident as intoxication. The complaint stated: "Marie Coleman was hit over the head with a phone and her husband detained." There was no indication what the termination of this incident was. The defendant submitted the following point for charge, "Evidence tending to show that the defendant committed an assault on Marie Coleman a number of years prior to the present charge does not apply the basis for an inference of malice on the part of the defendant, or that defendant murdered Marie Coleman." The court properly refused this point as stated. The reference to an assault committed "a number of years prior to the present charge" was clearly misleading and the trial court was correct in refusing to charge in a manner which improperly stated the facts. We believe that the evidence on this point was, at best, of doubtful probative value, but its introduction was not such fundamental error as to require a new trial. The defense caused the police report to be identified and since its contents were already in evidence, it was not error to allow the report itself to be introduced.

The defendant filed a motion in arrest of judgment averring the evidence was insufficient to sustain the verdict of the jury. In conformity with the practice under the Act of June 15, 1951, P. L. 585, §1, 19 P.S. §871, we have examined the entire record to determine whether there is sufficient evidence to sustain the conviction. This we have done and conclude there is ample evidence to sustain the conviction of murder in the first degree.*

---

* Cf: *People v. Scott*, 176 Cal. App. 458, 1 Cal. Rptr. 600 (1959) ; *King v. Horry*, N.Z.L.R. 111 (1952) ; *Regina v. Onufrejczyk*, 1 Q.B. 388 (1955).

We have, in addition to making an examination of the entire record, scrutinized the charge of the court and find no reversible error therein.

We are convinced the defendant received a fair trial and was accorded all of his rights of due process.

Judgment affirmed.

Mr. Justice MUSMANNO concurs in the result.

