482 A.2d 1095

**COMMONWEALTH of Pennsylvania**

v.

**Malcolm KYSOR, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1984.

Filed Oct. 5, 1984.

Petition for Allowance of Appeal Denied March 4, 1985.

Dennis G. Kuftic, Edinboro, for appellant.

Shad Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before BROSKY, WATKINS and HESTER, JJ.

HESTER, Judge:

On May 26, 1981, the victim, Barney Fenton, and appellant, Malcolm Kysor, were imbibing at the Conneaut Shores Country Club in Conneaut, Ashtabula County, Ohio. The victim and appellant left together around midnight. Afterwards, the victim was not seen until his body was discovered in a wooded area in Erie County, Pennsylvania on July 13, 1982.

On June 13, 1981, appellant was arrested in Corry, Pennsylvania for driving while intoxicated and theft by receiving stolen property. He was driving the victim's 1979 Chevrolet Monte Carlo. Many months following the prosecution of

these charges, the victim's body was discovered in Erie County. As a result, appellant was charged with criminal homicide.

Appellant filed a motion to quash the criminal information for homicide on grounds that it placed him in double jeopardy and violated § 110 of the Crimes Code. The motion was denied, and this appeal followed.

Appellant contends that sufficient evidence concerning homicide was available at the time prosecution for theft and drunk driving was instituted; therefore, the homicide prosecution violated § 110 of the Crimes Code and the double jeopardy clauses of the United States and Pennsylvania Constitutions. According to appellant, the following circumstantial evidence was known by investigating officers prior to the earlier criminal proceeding: 1) appellant was identified as the victim's companion at the Country Club; 2) he was arrested while driving the victim's automobile; 3) his explanations to officers of how he came upon the vehicle, that he borrowed it from his uncle and that he purchased it in Columbus, Ohio, were disproved; 4) the victim was last seen alive with appellant; and 5) the victim neither reported for work nor contacted relatives or friends following his evening at the country club with appellant.

A plurality of our Pennsylvania Supreme Court in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated, *Pennsylvania v. Campana*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), reinstated on remand, *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974), cert. den., *Pennsylvania v. Campana*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), required the Commonwealth to prosecute the defendant on "all known charges" originating in a "single criminal episode". *Commonwealth v. Campana*, 452 Pa. at 253, 304 A.2d at 441. The *Campana* plurality adopted the definition of "episode" as set forth in the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance 1.3 (Approved Draft, 1968): "An occurrence or connected series of occurrences and developments which may be viewed as

distinctive and apart although part of a larger or more comprehensive series."

■ The "single criminal episode" test protects the defendant from the oppression of sequential prosecution and "conserves precious judicial and professional manpower as well as the time of jurors, witnesses, and the use of public resources." *Id.*, 452 Pa. at 252, 304 A.2d at 441. These protections are preserved, then, by prohibiting reprosecution of a defendant for any offense which 1) arose from the same "criminal episode" and 2) was known to the prosecution at the commencement of the first trial.

In *Commonwealth v. Thornton*, 247 Pa.Super. 94, 371 A.2d 1343 (1977), the defendant pled guilty to a citation for authorizing his under-age sister to operate his motor vehicle. This plea resulted in payment of $30.00 in a fine and costs. Due to the fact that the operation of the vehicle by the defendant's sister resulted in the death of a third person, a coroner's inquest was conducted. As a result of facts disclosed at the inquest, the defendant was charged in a separate filing with involuntary manslaughter. Following conviction of involuntary manslaughter, he appealed from the judgment of sentence, alleging that the subsequent proceeding violated § 110 of the Crimes Code.

The *Thornton* court affirmed, holding that prior to the inquest, the prosecutor merely suspected the offense of involuntary manslaughter. Additional evidence disclosed for the first time at the inquest encouraged the institution of charges for involuntary manslaughter. The subsequent prosecution, therefore, did not violate § 110.

■ Appellant correctly contends that it is not necessary to produce the body to acquire a homicide conviction. Circumstantial evidence may be so convincing that it alone can satisfy the Commonwealth's burden to prove guilt beyond a reasonable doubt. *Commonwealth v. Burns*, 409 Pa. 619, 187 A.2d 552 (1963); *Commonwealth v. Lettrich*, 346 Pa. 497, 31 A.2d 155 (1943). We do not believe, however, that the circumstantial evidence available here prior to

discovery of the body was adequate either for probable cause for arrest or for conviction.

In *Burns*, upon which appellant relies, the defendant made several incriminating statements to relatives, friends and police officers. Although short of constituting confessions, these statements implicated the defendant as the killer. Moreover, one witness observed the defendant strike the victim with a hammer or an axe; and another witness observed the victim lying motionless on the floor of her apartment with blood on her forehead and the defendant standing nearby. This evidence is far more convincing than that advanced here by appellant.

■ It is more pertinent to note that evidence sufficient to support a guilty verdict does not mandate arrest and the filing of charges. In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), our United States Supreme Court emphasized that prosecutors were not obligated to commence criminal proceedings prior to their reasonable belief that there was sufficient evidence to prove guilt. The *Lovasco* court opined that due process does not require the subordination of "orderly expedition to that of mere speed." 431 U.S. at 796, 97 S.Ct. at 2052, 52 L.Ed.2d at 763.

At the time of the first trial, it was known that appellant sat with the victim in the Conneaut Shores Country Club, departed with him and drove his vehicle. Furthermore, his statements concerning how he came to possess the vehicle were proven false. Finally, the victim was absent from work and had not spoken with relatives or friends. It may be that the cumulative effect of this circumstantial evidence would sustain a guilty verdict on homicide; nevertheless, investigating officers were justified in waiting until the victim's body was found. We are of the opinion that the facts known at the time of the first trial were more commensurate with those in *Thornton* than those in *Burns*.

Appellant also argues that the court erred in denying him carte blanche access to police investigative reports. Appel-

lant maintains that without access to all reports, he could not determine what information concerning the homicide the Commonwealth had at the time of the first trial.

Instead of releasing the police reports to appellant, the court conducted an in camera inspection. Following the inspection, the court released for appellant's perusal certain incident reports, testimony and statements compiled by investigative officers. These documents were considered by the Court to be relevant to the double jeopardy issue. Of those documents deemed irrelevant and therefore not released, the court said:

> At this time the Court is going to include as irrelevant, this stack of documents here which I think should be marked as Court Exhibit Number 1 for the record. Now, admittedly, it's a pile of several hundred pages of documents, but we will attempt to group them for simplicity purposes as one exhibit.

(N.T. January 10, 1983, p. 5) In *Commonwealth v. Grayson*, 466 Pa. 427, 353 A.2d 428 (1976), the Commonwealth's refusal to permit the defendant to examine pretrial statements of its witnesses was sanctioned by the trial court. The Pennsylvania Supreme Court reversed, giving the defendant an opportunity to examine the statements in preparation for cross examination. The Court further opined:

> Whether the statements of the prosecution's witnesses would have been helpful to the defense is not a question to be determined by the prosecution or by the trial court. They would not be reading the statements with the eyes of a trial advocate engaged in defending a client.

*Id.*, 466 Pa. at 429; 353 A.2d at 429. *Grayson* was followed in *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977), wherein the defendant's right to examine prior statements of Commonwealth witnesses was not contingent upon the Court's opinion of relevance. Whether a particular statement was useful to the defense, the *Hamm* court held, was properly determined by an advocate. *See also Commonwealth v. Morris*, 444 Pa. 364, 281 A.2d 851 (1971).

■ This right of unfettered inspection appears limited to prior statements of Commonwealth witnesses. *In Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981), statements of rape complainants made to counselors were held subject to defense inspection, however, said statements included "only notes that are verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said."[1]  *Id.*, 494 Pa. at 28; 428 A.2d at 132. It appears, therefore, that tangible objects, criminal records, reports of examinations, inter alia, are not subject to inspection without the Courts determination of relevance beforehand.[2]

■ The record here does not reflect the type of information deemed irrelevant by the Court. We know only that several hundred pages were withheld from appellant's inspection. In the event some of those pages included statements of witnesses, the court erred in determining their relevance prior to appellant's inspection. Conversely, should they have included notes of investigating officers which were not confirmed statements of witnesses, the Court may have properly excluded them.

■ Our earlier determination that appellant was not placed in double jeopardy by the institution of homicide charges was premised upon the record before us. Since the record is incomplete, however, we must reverse and remand for the purpose of permitting appellant to review all statements of Commonwealth witnesses and all relevant portions of the police reports. Furthermore, the court is instructed to state specifically for the record those portions of police reports which are withheld from appellant for inspection. Should the Court find information, heretofore unavailable to appellant, subject to appellant's inspection, a new hearing on the motion to quash the indictment shall be conducted.

1. We are careful to note that written reports by police officers here may well constitute statements. Should that be the case, appellant's inspection, free from a prior court determination of relevance, is permitted.

2. Pennsylvania Rule of Criminal Procedure 305 B(1) enumerates those items · which the Commonwealth shall disclose upon request by the defendant. Although these items are controlled by mandatory disclosure, they are to be released only where they are material to the case at hand.

At the hearing's conclusion, appellant is free to appeal. If, on the other hand, no additional information is available for inspection, a new hearing is not to be conducted. Nevertheless, the court must specifically set forth a description of the portions of police reports excluded and an explanation for said exclusion. Appellant is free to appeal from that ruling as well. In short, our ruling today on double jeopardy is restricted to the incomplete record before us.

Reversed and remanded for proceedings not inconsistent to this disposition. Jurisdiction relinquished.